CHARLES SCHRODER ET AL. *v.* HARRY J. BATTISTONI
ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

Argued February 6—decided March 4, 1964

*Monroe S. Gordon,* for the appellants (defendants).

*Paul W. Orth,* with whom was *Robert A. Argazzi,* for the appellees (plaintiffs).

KING, C. J.  The plaintiffs, who owned lots bordering Lake Garda, maintained docks extending into it.  On April 15, 1962, the defendant Harry J. Battistoni, hereinafter referred to as the defendant, acting as agent of the defendant Lake Garda Water Company, Inc., hereinafter referred to as the defendant corporation, removed two of these docks by the use of a bulldozer and threatens to remove the remaining docks and any docks hereafter built, unless those who maintain them pay to the defendant corporation certain nominal rentals. There is no finding as to the value of any of the docks except the two which the defendant destroyed. These were found to have a total value of $70.  The plaintiffs brought this action, claiming that they had rights to maintain docks by virtue of easements by implication or prescription.  They sought (1) a declaratory judgment that they had such rights without obligation to make any payment for their exercise, (2) injunctive relief to restrain the defendants from interfering with any docks, and (3) damages.  From an adverse judgment the defendants have appealed to this court.  The plaintiffs claim that the judgment of the court can be supported on three grounds.

The first ground is that the plaintiffs had implied easements to erect and use docks extending out into

Lake Garda from their adjacent waterfront lots. In May, 1936, the Lake Garda Company, Inc., conveyed some 200 acres of land surrounding, and including, Lake Garda, to Ron-Day, Inc., the developer of the area. In October, 1945, Ron-Day, Inc., conveyed the lots it had been unable to sell, together with the lake itself, to the defendant, and in June, 1946, the defendant conveyed that property to the predecessor in title of the defendant corporation. The plaintiffs Ralph M. and Antoinette B. Gezelman purchased their land from Ron-Day, Inc., in 1937, and the plaintiffs Charles and M. E. Mildred Schroder made their purchase from the same grantor in 1940. There is nothing in the finding to indicate that Ron-Day, Inc., intended to grant to the Gezelmans, the Schroders or the predecessors in title of the other plaintiffs, easements to build docks extending into the lake; or that the circumstances existing at the time of the sales were such that such an intention could be presumed. Nor is there any finding that the easements claimed were reasonably necessary for the use and normal enjoyment of any of the properties conveyed to the plaintiffs. In the case of the plaintiffs other than the Gezelmans and the Schroders, an additional and greater infirmity exists in that they purchased their respective properties after 1950 from various third parties. There is no finding that these grantors possessed easements, express or implied, to construct docks extending into the lake. These remaining plaintiffs could acquire, from their respective grantors, no rights to build docks on the lake bottom when the grantors themselves held no such rights. There is no basis for the conclusion that any of the plaintiffs had easements by implication to erect and maintain docks. *Gager* v. *Carlson,* 146 Conn. 288, 293, 150

A.2d 302; *D'Amato* v. *Weiss,* 141 Conn. 713, 717, 109 A.2d 586; *Rischall* v. *Bauchmann,* 132 Conn. 637, 643, 46 A.2d 898; *Whiting* v. *Gaylord,* 66 Conn. 337, 348, 34 A. 85; 1 Thompson, Real Property (Perm. Ed. 1940) §§ 409–411.

The plaintiffs claim in their brief that the Schroders and the Gezelmans have easements by prescription to build and maintain docks on the lake bottom. It is not claimed that the court based its decision on such a ground, and, indeed, there is nothing in the finding to indicate that it did, or to support a decision on that ground, had it been made. It may be noted, however, that Gezelman built his original dock with the express permission of Ron-Day, Inc., and with lumber furnished by the defendant. This is wholly inconsistent with his acquisition of any prescriptive right to maintain the dock. See cases such as *Loewenberg* v. *Wallace,* 151 Conn. 355, 357, 197 A.2d 634.

Schroder built his first dock at some undesignated time "early in 1947". It was partially destroyed in 1955, and he built another dock a year later. There is no finding that even the first dock had been built fifteen years prior to the time of the defendant's acts of demolition.

Since at least one element essential to the acquisition of an easement by prescription is lacking in the case of the Gezelmans and the Schroders, there is no occasion to consider what, if any, other essential elements may also be lacking. Thus, even if it were to be assumed that the court held that these plaintiffs had acquired rights by prescription, such a conclusion would have been without support in the subordinate facts, and, so, erroneous. General Statutes § 47-37; *Sachs* v. *Toquet,* 121 Conn. 60, 66, 183 A. 22; *Aksomitas* v. *South End Realty Co.,* 136

Conn. 277, 281, 70 A.2d 552; *McGibney* v. *Waucoma Yacht Club, Inc.,* 149 Conn. 560, 565, 182 A.2d 622.

The remaining ground upon which the plaintiffs claim that the judgment can be supported is that the court correctly concluded that the "defendants are estopped from disputing the right of the plaintiffs to use and maintain their docks." There is nothing to indicate that there was an "intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury." *Bland* v. *Bregman,* 123 Conn. 61, 65, 192 A. 703. The plaintiffs not only do not dispute, but on the contrary have stipulated, that the defendant corporation now owns, and that its previously described predecessors in title had owned, the lake, including the submerged land. There is nothing to indicate, nor is it claimed, that the land records are not in full accord with this past and present ownership of the lake. The trial court was in error in finding an estoppel. *Giddings* v. *Emerson,* 24 Conn. 538, 549; *Monterosso* v. *Kent,* 96 Conn. 346, 350, 113 A. 922; *Girden* v. *Alubowicz,* 136 Conn. 511, 513, 72 A.2d 491; 19 Am. Jur. 743, Estoppel, § 87; note, 76 A.L.R. 304, 310; see also note, 41 A.L.R.2d 558, 560.

There is error, the judgment is set aside and a new trial is ordered.[1]

In this opinion the other judges concurred.

---

[1] Here, as in *Gager* v. *Carlson,* 146 Conn. 288, 299 n., 150 A.2d 302, no complaint is made as to the breadth of the injunction. If in a new trial any injunction should issue, it should be properly limited in scope and should have the requisite specificity outlined in cases such as *Labbadia* v. *Bailey,* 147 Conn. 82, 86, 157 A.2d 237.