## KEVIN B. KENNY *v.* CAROLYN S. DWYER
### (5943)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued June 9—decision released September 6, 1988

*Thomas J. Shortell,* with whom on the brief, was *Elizabeth K. McLaughlin,* for the appellant (defendant).

*William J. Melley III,* for the appellee (plaintiff).

DUPONT, C. J. The defendant is appealing from the judgment of the trial court ordering the defendant to

allow the plaintiff unimpeded access to a well located on property owned by the defendant and issuing a permanent injunction restraining the defendant from interfering with the plaintiff's use of that well. We find error.

The following facts are pertinent to this appeal. The parties own adjoining properties located at Oak Grove Beach in East Lyme.[1] Prior to December, 1970, municipal water service was not provided in that area. A fresh water well is located on the defendant's property.

In 1962, the defendant's predecessors in title to lot 313, Leslie and Ethel Sanders, entered into a "well agreement" with five adjoining property owners. That agreement granted these adjoining "[l]ot owners, their successors, heirs and assigns, an easement to use the well on said lot 313 and the installation leading therefrom to the various properties and to enter said lot 313 for the purpose of maintaining and repairing said Well and installations." The well agreement provided that the easement was granted "with binding effect on any subsequent owner of lot 313." The agreement further provided that the lot owners, excepting the grantor, would assume the cost of maintenance of the well and of the water pipes leading to the various properties. The well agreement was dated July 28, 1962, and was recorded on October 29, 1962.

The plaintiff's predecessors in title to lot 316, F. L. and Dorothy McWilliams, were signatories to the well agreement. Prior to their signing of the agreement on July 28, 1962, however, the McWilliamses conveyed lot 316 to Raymond and Alice Sergent on July 12, 1962. The deed transferring lot 316 from the McWilliamses to the Sergents expressly included "the right to take

[1] The property owned by the plaintiff is referred to as lot 316 in the well agreement at issue in this appeal; the property owned by the defendant is referred to as lot 313. Each property will be hereinafter so termed.

water from a well situated on Lot Number 313 . . . and owned by Leslie W. Sanders and Ethel G. Sanders, and subject to the obligations specifically set out in a 'Well Agreement' recorded on the Land Records . . . . " On November 1, 1968, the Sergents conveyed by warranty deed lot 316 to John R. King, which deed expressly granted the right to take water from lot 313 pursuant to the well agreement. From 1962 to December, 1970, both the Sergents and John R. King took water from the well located on lot 313.

In December, 1970, a municipal water line was installed providing service to Oak Grove Beach. Thereafter, neither the Sanderses, the owners of lot 313, nor King, nor any other signatories to the well agreement used or drew any water from the well. Early in 1971, the tank and pumping equipment was dismantled and sold, and the well was covered with a wooden box.

On August 31, 1972, King conveyed title to lot 316 to the plaintiff. The deed conveying the property did not expressly mention the well easement but did, however, convey title "with the appurtances thereof" pursuant to the habendum clause of the deed. The plaintiff testified that he was aware of the well prior to his purchase of the property and that he considered the option to draw water from the well, rather than from the municipal water line, a distinct advantage and an added value to the property.

On October 10, 1973, a release of the well agreement was signed by the Sanderses, the owners of lot 313; John R. King, the plaintiff's predecessor in title to lot 316; and the other signatories to the well agreement. The release contains neither witnesses nor an acknowledgment of King's signature. There was testimony that the plaintiff was invited but declined to sign the release at the time of his purchase of lot 316. The plaintiff denied that he was requested to sign the release at the

time he purchased lot 316. There was no dispute, however, that the plaintiff declined to sign the release when so requested in June, 1978. The release was recorded on July 10, 1978.

Following the plaintiff's purchase of lot 316 in 1972, he has not used, maintained or drawn water from the well. On June 28, 1978, the Sanderses conveyed lot 313 to the defendant "subject to a certain agreement concerning well rights and obligations . . . ." On May 15, 1984, the defendant removed the box covering the well and filled the well with sand. One week later, the plaintiff commenced this action. Although the well has not been used since December, 1970, soundings of the well indicate that the original water level remains intact.

The plaintiff alleged in his complaint that his predecessor and the defendant's predecessor in title entered into a well agreement granting well rights in favor of lot 316, that the well agreement was in effect at the time he purchased lot 316, and that such agreement was binding on any subsequent owner of lot 313. Accordingly, the plaintiff alleged that the defendant's filling in of the well prevented the exercise of his rights under the well agreement and caused him irreparable harm. The plaintiff further alleged that the defendant's actions constituted a trespass and that the defendant, by proceeding "under the guise that the well agreement is terminated," was acting in bad faith. The plaintiff requested a permanent injunction requiring the defendant to restore the well and restraining the defendant from ever filling in the well or interfering with the plaintiff's right to use the well.

The defendant in her answer denied that the easement was in effect at the time the plaintiff purchased lot 316 and denied that she had breached the easement agreement. The defendant also denied the plaintiff's allegations regarding trespass and bad faith. The

defendant raised two special defenses, claiming that the easement was extinguished due to abandonment or, in the alternative, estoppel. In addition, the defendant, by way of a counterclaim, made an allegation of adverse possession.

The trial court concluded that the language contained in the habendum clause of the deed conveying the plaintiff title to lot 316 was sufficient to include the well rights under the well agreement, and that the plaintiff's nonuse of the well was insufficient to establish abandonment by the plaintiff of his rights under the agreement. The trial court further concluded that the release of the easement was invalid in that King signed it subsequent to his conveyance of lot 316 to the plaintiff, and due to the lack of witnesses or an acknowledgment of King's signature. The court also concluded that the defendant had presented insufficient evidence to support her special defense of estoppel and her counterclaim alleging adverse possession. Accordingly, the trial court rendered judgment for the plaintiff on both his complaint and on the defendant's counterclaim. The court ordered the defendant to restore the well by removing the sand placed therein and to allow the plaintiff unimpeded access to the well, and issued a permanent injunction restraining the defendant from interfering with the plaintiff's right to use the well. The court also ordered that maintenance of the well was to be in accordance with the terms and conditions of the well agreement.[2]

---

[2] In response to the defendant's motion for articulation, the court stated that the 1962 well agreement was valid, that the well rights pursuant to that agreement were passed to the plaintiff and his predecessors in title, that the agreement created an easement appurtenant in favor of lot 316 which passed to the plaintiff under the habendum clause of his deed, and that the court's order required that the well be restored, maintained and kept in a condition contemplated and required by the well agreement so as to meet the water requirements, when necessary, of the plaintiff's lot.

The defendant claims that the trial court erred (1) in concluding that an easement appurtenant existed in favor of lot 316 at the time the plaintiff purchased that property, (2) in concluding that well rights passed to the plaintiff under the habendum clause in his deed, (3) in concluding that the easement was not abandoned, and (4) in ordering the defendant to restore and maintain the well.

The defendant's first claim is that the well agreement failed to create an easement in favor of lot 316. The defendant avers that the McWilliamses, the plaintiff's predecessors in title to lot 316, conveyed that lot to the Sergents on July 12, 1962. Since the McWilliamses signed the well agreement on July 28, 1962, the defendant argues that the McWilliamses could not enter into an agreement purporting to affect property they did not own and, therefore, that the easement in favor of lot 316 never attached.[3] The defendant further points out that the Sergents did not sign the well agreement after they purchased lot 316.[4]

When the McWilliamses conveyed lot 316 to the Sergents, they did not possess an easement in favor of lot 316 to use the well located on lot 313 and, in fact, the well agreement had not yet been established. Under these circumstances, the McWilliamses could not con-

[3] The plaintiff contends that the validity of the 1962 well agreement was never disputed at trial by the defendant and, therefore, it cannot be raised as an issue on appeal. The defendant, however, clearly raised the issue of the easement's validity in her motion for articulation. The plaintiff also argues that the defendant admitted in her pleadings that the agreement was valid, and thus cannot on appeal challenge the validity of the agreement. Although the defendant admitted in her answer that her predecessor in title and the plaintiff's predecessor in title entered into the well agreement, the defendant did not admit that the easement was valid and denied that the easement was in effect at the time the plaintiff purchased lot 316. The defendant's claim of error is properly raised on appeal to this court.

[4] The trial court erroneously stated in its memorandum of decision that the Sergents were signatories to the well agreement.

vey an easement that did not yet exist in favor of lot 316 which they did not possess, and subsequent grantees of lot 316, including the plaintiff, could not acquire such rights. See *Schroder* v. *Battistoni,* 151 Conn. 458, 460, 199 A.2d 10 (1964). "It is fundamental that a grantor cannot effectively convey a greater title than he possesses." *Stankiewicz* v. *Miami Beach Assn., Inc.,* 191 Conn. 165, 170, 464 A.2d 26 (1983); *Martin* v. *Sterling,* 1 Root 210, 211 (1790). Nor could the McWilliamses enter into an agreement purporting to affect property they no longer owned. We conclude, therefore, that the express easement granting well rights failed as to lot 316, and that the trial court's finding that the 1962 well agreement was valid regarding lot 316 is clearly erroneous. Practice Book § 4061.

In light of the failure of the express easement, we turn to the question of whether an implied easement to use the well was created in favor of lot 316. An implied easement is typically found when land in one ownership is divided into separately owned parts by a conveyance, and at the time of the conveyance a permanent servitude exists as to one part of the property in favor of another which servitude is reasonably necessary for the fair enjoyment of the latter property. See, e.g., *D'Amato* v. *Weiss,* 141 Conn. 713, 717, 109 A.2d 586 (1954); *Rischall* v. *Bauchmann,* 132 Conn. 637, 642–43, 46 A.2d 898 (1946). In the absence of common ownership, as in this case, however, an easement by implication may arise based on the actions of adjoining property owners. 2 R. Thompson, Real Property § 352, p. 304.

There are two principal factors to be examined in determining whether an easement by implication has arisen: (1) the intention of the parties; and (2) whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate. *Gager* v. *Carlson,* 146 Conn. 288, 292–93, 150 A.2d 302 (1959);

*Schroder* v. *Battistoni,* supra, 460; *D'Amato* v. *Weiss,* supra, 717–18. It is clear from the evidence presented at trial, namely, that the plaintiff has never drawn water from the well, that the use of the well is not in any sense necessary for the use and normal enjoyment of lot 316. *Schroder* v. *Battistoni,* supra, 460. In the absence of the requisite degree of necessity, we cannot conclude that an easement by implication is present in favor of lot 316 regarding the use of the well on lot 313, whether or not such an easement by implication may have existed at one time. We note in this regard that implied easements are disfavored in Connecticut and "are allowed to a very much more limited extent than in many other states." *Gager* v. *Carlson,* supra, 293.

In the absence of an express or implied easement, the plaintiff, as the owner of lot 316, possesses no right to use the well located on the property owned by the defendant. Since we reach this conclusion, we need not reach the defendant's other claims of error.

There is error, the judgment of the trial court is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.