[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both sides of this litigation move for summary judgment on the complaint and counterclaim. The issues presented by these cross-motions focus on whether two of the defendants, Thomas and Irma Buccino, own any portion of the bed beneath Hall's Pond; whether the Buccino's have riparian rights to use Hall's Pond for recreational purposes; and whether the plaintiffs, Ace Equipment Sales, Inc. (Ace), WFGC, LLC, and Willington Fish and Game Club, Inc., must remove a fence obstructing a right-of-way belonging to the Buccinos.
Summary judgment shall be granted if the pleadings and documentary proof submitted demonstrate that no genuine dispute regarding material facts exists and that the movant is entitled to judgment as a matter of law, Practice Book § 17-49.
It is undisputed that Hall's Pond, located in Willington, is a manmade pond, comprising twenty acres of water surface, which was formed by erection of a dam and spillway at its southwesterly end which impounds waters of a nonnavigable stream. Until the 1950's Gardiner Hall, Jr., Co. (Hall) owned all the land under the pond and surrounding it. On December 23, 1955, Hall conveyed the dam and mill property downstream of the pond to the predecessors in title of the Buccinos who acquired the dam and mill property on February 24, 1967.
Hall retained the land upstream from the dam until July 1, 1987, when it was conveyed to the predecessors in title of WFGC who acquired that land on July 29, 1996. On September 11, 1996, WFGC conveyed most of this property to Ace but retained a portion including about one-half acre of the pond bed. WFGC uses the pond for recreational fishing and leases such CT Page 550 rights to the Willington Fish and Game Club, Inc., which corporation stocks the pond with fish. The pond is not open to the public.
The Buccinos are the only owners of land abutting the pond besides the plaintiffs. When they purchased the dam and mill property, they also acquired rights to take and use pond water for industrial purposes and to meet the needs of the mill and factory on the property and the obligation to maintain the dam. The Buccinos presently are under orders from the DEP to keep the dam in good repair. The Buccinos have given permission for others to utilize the rights they claim to use the pond for recreational purposes. These recipients are the other defendants in this case, viz. Hall's Pond Fly Fishing Club, Inc., Robert Hisey, Peter Latincsics, and Jerry Debski.
The plaintiffs have erected a twelve foot high fence across a twenty-five foot wide right-of-way which was also acquired by the Buccinos through the deed conveying the dam and mill property to them.
The plaintiffs seek an injunction to bar the defendants from entering onto or using the pond for recreational purposes and a declaratory judgment that the Buccinos own no part of the pond bed. The defendant's claim the right to use the pond for recreational purposes, and the Buccinos contend that they do own a sliver of subaqueous land at the base of the dam. The defendants seek a declaratory judgment regarding that boundary and an injunction to enforce their right to use the pond and remove the fence which barricades their right-of-way.
The parties agree that if the defendants have rights to use the pond the fence must come down.
 I
The court first addresses whether there exists any genuine factual dispute regarding the Buccino's boundary line. The Buccinos proffer the deed which they argue transferred to them and their predecessors in title a small slice of land on the pond side of the dam. The plaintiffs counter that the Buccinos have acquiesced in making the dam itself the boundary between their land and that of Ace. The plaintiff submit statements uttered by the Buccinos at the DEP hearing regarding maintenance of the dam at which the Buccinos disavowed ownership of any land beneath the pond.
The statements made by the Buccinos to the DEP are admissible pursuant to the Connecticut Code of Evidence § 8.3(1)(A), which provides, in part, that "[a] statement that is being offered against a party and is (A) the party's own statement in either an individual or representative CT Page 551 capacity" is not excluded by the hearsay rule. "In civil as well as in criminal cases, [t]he words and acts of a party-opponent are generally admissible against him under the admission exception [to the hearsay rule]." In Re Zoarski, 227 Conn. 784, 796, 632 A.2d 1114 (1993).
The plaintiffs also argue that the Buccinos acquiesced to the new boundary because they did not assert any rights of ownership in the pond. The plaintiffs contend that the Buccinos did not occupy, use, or lease the pond for recreational purposes for almost forty years. The plaintiffs assert that the failure to exercise acts of ownership over the pond demonstrates that the Buccinos did not believe that they owned any portion of the pond. The plaintiffs submitted Thomas Buccino's testimony from the temporary injunction hearing in support of these arguments. (Appendices F, G, H). At the hearing, Thomas Buccinos testified that he and his wife used the pond for recreational purposes on approximately three occasions and that he did not lease his rights to use the pond to others until 1999. (Appendices F, G H).
Although the Buccinos admit that they made these statements regarding their ownership of the pond, they claim that those statements were made to inform the DEP that the owners of the frontage property and of the land under the pond should participate in repairing the dam. (Defendants' Brief in Opposition to the Motion for Summary Judgment, p. 17). The Buccinos argue that they never intended to acquiesce in a change in the description of their boundary. (Defendant's Brief in Opposition to the Motion for Summary Judgment, p. 17). The Buccinos also assert that the description of the boundary in the deed is clear, and that they exercised rights of ownership by allowing residents of the town to use the pond. (Defendant's Brief in Opposition to the Motion for Summary Judgment, p. 16.)
The statements against Buccino's interest made during the DEP litigation conflict with Buccino's statements made in the current case and with the description of the boundary in the deed. At the hearing on the temporary injunction, Buccino testified that he could have been wrong when he made the statements to the DEP. (Appendix C1). Additionally, the evidence shows that the Buccinos believe they have the right to use the pond for recreational purposes and they have leased those rights to the other defendants in this action since 1999. (Appendix F, G H).
The litigation between the DEP and the Buccinos concerned the repair and maintenance of the dam and not the ownership of the pond. Thomas Buccino stated that he did not own the pond, however, at the time there was no dispute over the boundaries of the property. The statements submitted to the DEP by the Buccinos were not offered for the purposes of determining boundaries to the pond. The plaintiffs' evidence shows that CT Page 552 the Buccinos made these statements and that Buccinos only used the pond occasionally for recreational purposes. The evidence, however, fails to establish conclusively that the Buccinos were aware that they were acquiescing in a different boundary than the one described in the deed to the property. Additionally, there is no evidence showing that the plaintiffs or their predecessors in interest exercised exclusive control over the pond before the events leading to the current litigation.
The court concludes that a genuine factual dispute exists as to whether the Buccinos own the sliver of land in issue or have acquiesced to having the dam as their boundary.
 II
The lack of resolution of the issue of ownership of subaqueous land is not dispositive, however. There is no factual dispute that the Buccinos own land upon which the dam is constructed and that abuts the pond. Riparian rights to use a body of water may appertain to land which merely is bounded by that water but does not extend underneath, Harvey RealtyCo. v. Wallingford, 111 Conn. 352, 358 (1930). Riparian land "means a tract of land that borders on a watercourse or lake, whether or not it includes a part of the bed of the watercourse or lake," Restatement (Second), Torts, § 843 (1977).
The plaintiffs assert that abutters of artificial water bodies have no riparian rights. The plaintiffs acknowledged that such usufructuary attaches to ownership of abutting land of natural ponds but denied that the same rule applies when the pond is manmade. The defendants contend that no such distinction between natural and artificial ponds exists. The court agrees with the defendants' position that riparian rights are appurtenant when property abuts an artificial pond in the absence of contractual restriction or prescriptive extinction of those rights.
The court recognizes that with respect to lakes and ponds the term "littoral" rather than "riparian" is more precise, but, because case law often uses these term interchangeably, this memorandum refers to these incorporeal rights as riparian.
A riparian proprietor can make reasonable use of a pond for recreational purposes, including fishing, Reis, Connecticut Water Law: Judicial Allocation of Water Resources (1967), p. 51. The right creates no ownership of the water but simply a usufruct for drinking, bathing, and other domestic purposes, Harvey Realty Co. v. Wallingford, supra, 360.
The court's research discloses no Connecticut appellate level case CT Page 553 which squarely decides the issue of whether a different rule is used to determine riparian rights for property abutting an artificial pond as opposed to a natural one. This issue was raised in Lake Williams BeachAssn. v. Gilman Bros. Co., 197 Conn. 134 (1985), but our Supreme Court found it unnecessary to answer that question in order to decide that case and, instead, assumed, arguendo, that such riparian rights did exist, Id. 139. The trial court in that case, Purtill, J., had held that no riparian rights are available to abutters of artificial lakes. Judge Purtill's ruling was followed in Peck v. Edelman, Superior Court, Windham J.D., CV 97-56833 (July 10, 2000), Kocay, J. (27 Conn.L.Rptr. 633).
A commentator has also concluded that such a distinction is drawn in Connecticut, Reis, Connecticut Water Law: Judicial Allocation of Water Resources (1967), p. 78. However, that author cites as authority for this distinction the case of Schroder v. Battistoni, 151 Conn. 458 (1964). That case fails to support that proposition. In Schroder v. Battistoni, supra, the plaintiffs built docks upon and which invaded the lake bed
which was land owned by another and adjacent to theirs. The plaintiff inSchroder v. Battistoni, supra, never attempted to justify this trespass under any theory of riparian right to build structures on a lake bed. Their argument was that they possessed an easement to build the docks established by implication or acquired prescriptively. Our Supreme Court never held in that case that the plaintiffs had no riparian rights to use the water of the lake recreationally because it was artificially created. The Court did hold that the plaintiffs had "no right to build docks on the lake bottom. . .," Id. 460. (emphasis added). The Court was careful to base its ruling on the wrongful use of the soil beneath the lake and not on the absence of a right to use the water above. Schroderv. Battistoni, supra, is simply not a riparian rights case.
Other Connecticut Supreme Court cases appear to assume that riparian rights do accrue where one owns property adjacent to an artificial water body or recognize such a right in dicta. In DeWitt v. Bissell, 77 Conn. 530
(1905), the plaintiff owned land bordering manmade Long Pond and sued, in nuisance, the dam owner who lowered the water level generating foul odors because of the effect of summer heat on the exposed pond bed. Our Supreme Court rejected the validity of the nuisance claim because the dam owner had the right to modulate the water level. While that case addressed a nuisance claim rather than a violation of riparian rights, the Court commented, parenthetically, that the owner of the dam "is subject to the rights belonging to other riparian owners . . .," Id. 534.
Perhaps, more illuminating is the case of Chamberlain v. Hemingway,63 Conn. 1 (1893). There, our Supreme Court observed that if an artificial sluiceway for tidal water was a "watercourse" riparian rights would pertain to owners of abutting upland property, Id. 3. The Court CT Page 554 mused that such a watercourse "may be natural. . ., or it may beartificial. . .," Id. 5. (emphasis added). The Court concluded that the sluiceway under scrutiny was neither a natural nor an artificial watercourse, Id. 6 and 7.
In Adams v. Manning, 62 Conn. 477 (1881), the plaintiff petitioned for an injunction against the unreasonable detention and discharge of water from a manmade reservoir. A dam had created the reservoir decades earlier. In assessing the respective rights of the parties the court noted, "[a]s a matter of law, so far as the rights of all these are concerned, the artificial became by this long continued use the natural condition of the stream. . .," Id 488.
Zephaniah Swift remarks that owners of land adjoining nonnavigable watercourses have the right to fish thereon and exclude others from doing so, 1 Z. Swift, Revised Digest of the Laws of the State of Connecticut, 1849, p. 114. Conspicuously absent from Swift's discussion of such rights is any distinction between natural and artificial watercourses.
The Restatement Second states that "[l]akes may be formed, however, by artificial obstruction of a stream or by the diversion of a stream into a dry depression. These lakes, even though artificially created, are segments of a watercourse. . .," Restatement (Second), Torts, § 842d (1977). As noted above, the Restatement (Second) goes on to state that land bordering such a lake is riparian property from which riparian privileges spring, Restatement (Second), Torts, § 843a and b (1977).
This view of the law that riparian rights generally apply to land adjoining artificial watercourses is also noted in 78 Am.Jur.2d § 274. "As a general proposition where an artificial change of a permanent nature is produced in a natural stream, riparian rights attach to the stream in its artificial condition," Id. That section notes that Pennsylvania cases hold otherwise.
In Wickowski v. Swift, 203 Va. 467; 124 S.E.2d 892 (1962), the Virginia Supreme Court held that adjoining land owners have the same riparian rights with regard to artificially created ponds as exist for naturally occurring ponds, Id. 469. The Supreme Court of New Hampshire had ruled likewise in Taggart v. Jaffrey, 75 N.H. 473; 76A 123 (1910). "It had often been decided, both in England and America, that watercourses made by the hand of man may have been created under such conditions that, so far as the rules of law and the rights of the public or of individuals are concerned, they are to be treated as if they were of natural origin, [citation omitted]," Id. 474. "[T]he watercourse, though artificial, may have originated under such circumstances as to give rise to all the rights that riparian proprietors have in a natural and permanent CT Page 555 stream. . .," Id. 476.
Some states recognize that abutting landowners acquire riparian rights in artificial lakes and ponds when created by damming a natural stream if the period for prescriptive rights has passed since the alteration was made, see e.g. Lake Mille Lacs Investment, Inc. v. Payne, 401 N.W.2d 387,390 and 391, (Ct. of App. Minn. 1987); and Smith v. Youman, 96 Wis. 103,109; 70 N.W. 1115, 1117 (1897).
The strongest statement of the notion that adjoining landowners possess riparian rights in artificial watercourses is contained in Cloyes v.Middlebury Electric Co., 80 VT. 109; 66 A. 1039 (1907). "The riparian owners are entitled to the benefit of any such change which may have been made, if they were apparently intended to be permanent and such owners have acted upon the faith of the conditions so remaining," Id. 123. "The artificial conditions created . ., became the natural conditions — not prescriptively, nor by lapse of time, nor by grant contained in the contract, nor by force of the contracts, as such, at all; but by force of the circumstances under which they were created. . .," Id.
The court gleans from these cases from other jurisdictions and treatises the principle that if a natural stream is dammed so as to form a lake or pond permanently or for an extended period of time, that artificial lake or pond is treated the same as a natural one as far as riparian rights are concerned. This principle is consistent with the rule espoused in Connecticut case law as quoted above in Adams v. Manning, supra.
It might be argued that the creator of an artificial pond ought to be rewarded for the investment of time and money expended in that effort by having a monopoly of use of the pond. If the creator desires to do so, such monopoly can be accomplished by ensuring that the impounded waters are entirely within one's boundaries or by retaining a strip of land surrounding the pond so as to eliminate the possibility of abutters or by retaining riparian rights for oneself by deed if abutting parcels are conveyed to others. Ownership of uplands may be conveyed exclusive of riparian rights that would otherwise have attached, Mianus Realty Co.,Inc. v. Greenway, 151 Conn. 128, 131 (1963).
It is undisputed that Hall's Pond, even though created originally by damming a natural stream, has existed as a pond for at least half a century. There is no proof that the pond was meant to be temporary. It is to be treated under the law in the same way a natural pond would with respect to riparian rights. Ordinarily, the owner of abutting land is presumed to possess riparian rights in the adjoining lake or pond, MianusRealty Co. v. Greenway, Id. The documents submitted are devoid of any CT Page 556 evidence that the Buccinos' predecessors in title withheld such rights by grant or that they were lost by prescription. Consequently, the defendants have, as a matter of law, the right to use Hall's Pond for recreational purposes.
Summary judgment is granted in favor of the defendants and denied as to the plaintiffs. The issue of the precise location of the boundary between the Buccinos' land and that of Ace remains unresolved by this decision. The specifics of injunctive relief must be rendered after a hearing in damages.
Sferrazza, Judge.