ROBERTSON, Justice,
for the Court:
I.
Barbara and Bruce Graybeal have, since March of 1960, owned a small piece of country land in northern DeSoto County, and the question is whether they have rights in and to a man-made, land-locked lake that meanders around their northern and eastern boundaries. The Chancery Court granted the Graybeals, vis-a-vis the holders of record title to the bed of the lake, “a limited and non-exclusive use of the lake in the immediate area of ... [the] frontage to their property ..notwithstanding nothing in the Graybeals’ deed confers such right. In holding the Gray-beals’ and their predecessors’ permissive use of the lake for twenty-seven years could not be lightly discounted, no doubt with the best of intentions, the Chancery Court failed to regard settled legal principles.
We reverse.
II.
Back in the 1940’s, Ed F. Crenshaw owned a much larger tract of land in the area, including both the lake and the property the Graybeals now hold. Crenshaw hired a man named Allen Weaver, who constructed a thirteen acre land-locked lake.
In 1948, Crenshaw carved out the 3.87 acre tract at issue, so that it includes a peninsula jutting northeastward and extending well into the lake, and then conveyed that land to a Dr. W.G. Alford and his wife. The Alfords subsequently conveyed to J.G. and Dorothy Braswell, who, in turn, on March 25, 1960, conveyed by warranty deed to the Graybeals. The Graybeals’ northern and eastern boundary is carefully described by metes and bounds in their deed, which at one point states the property “runs ... to an iron pen in the edge of a lake, thence with the meanders of the lake north 6 degrees 21 minutes east, 314 feet to a point....” All agree the northern and eastern boundaries of the Graybeals’ property coincide with the water’s edge on the southern and western sides of the lake. The Graybeals’ deed makes no mention of fishing rights or other licenses or privileges pertaining to the lake.
Through the years, Crenshaw and his wife, Louise, followed by their son, Ed F. Crenshaw, Jr., and his wife, Sheilah, permitted the Graybeals and their predecessors in title use of the lake. There is evidence the Graybeals purchased a boat from Louise Crenshaw, who had a general store at the time, and all understood the boat would be used on the lake. Indeed, the Graybeals, after they bought the property, continued to allow their grantor, J.G. Braswell, to return to the lake from time to time to fish.
The lake and the property to the north and east have remained in the hands of the Crenshaw family, who of late have pursued *652 a subdivision development. In the 1980’s with Ed Crenshaw, Jr., in charge, the land north of the lake was divided into lots roughly one and a half acre in size. Individuals have purchased Lots number 8, 9, 10 and 11, containing a portion of the lake-bed extending all the way across the lake to the Graybeal property line. Each lake lot owner has lake privileges and ownership rights within the boundary of his property.
Some years before, however, the relationship between the Graybeals and the Crenshaws began to sour. It seems the State wanted to widen north-south Highway 301, lying immediately to the west of the area, and the Crenshaws saw this as advantageous. The Graybeals, however, got wind that the project was to be pursued with federal funds. Believing that the federal debt and annual federal budget deficit out of hand and that each citizen must do his part in response, the Graybeals “formed a club to fight it.”
In any event, something certainly chilled the theretofore amicable relations between the Graybeals and the Crenshaws and, by March, 1986, the Crenshaws had begun persistent objections to the Graybeals’ use of the lake. Matters became increasingly confrontational until August 13, 1987, when the Graybeals commenced this civil action by filing their complaint in the Chancery Court of DeSoto County, Mississippi. The Graybeals named as defendants Ed Crenshaw, Jr., and Ed Crenshaw, III, asserted rights to the recreational use of the lake, and demanded injunctive relief. In due course, the matter came on for trial, and in the end, the Chancery Court entered its Solomonic decree that the Graybeals held no riparian rights, as the lake was an artificial and not a natural water course but, nevertheless, were entitled to a limited non-exclusive use of the lake in the immediate area of their property’s lake frontage.
The Crenshaws now appeal.
III.
Our controlling principles are well settled. Black v. Williams, 417 So.2d 911 (Miss.1982), found adjoining landowners contesting rights to a 125.3 acre lake formed when the Big Sand Drainage District built a dam across drainage courses. Black sought to go upon the lake and upon the waters beyond the boundaries of his land beneath, and a lawsuit ensued. Addressing “only the rights of owners of land beneath ‘artificial’ or ‘man-made’ lakes,” Black announced
that owners of the fee and the land beneath such a lake, in the absence of some statute or covenant or agreement to the contrary, have exclusive control over the water over their respective portions.
Black, 417 So.2d at 912. Black had
no right to travel or make any entry upon this lake beyond the boundaries of his own land.
Black, 417 So.2d at 912.
We reiterated this view in Dycus v. Sil-lers, 557 So.2d 486 (Miss.1990).
Where a lake or pond is wholly man-made or artificial, the record titleholders own the waters and all life within them as their interests may appear, [citing Black v. Williams ] whether the lake or pond has been built for commercial, drainage, recreational or aesthetic reasons.
Dycus, 557 So.2d at 502.
On the authority of Black and Dycus, the Crenshaws may keep the Graybeals on their side of the property line. They may of right exclude the Graybeals from the lake, an artificial, man-made body of water, and the Chancery Court correctly held adjoining landowners enjoy no riparian rights. Still, the senior Crenshaw had always allowed the Graybeals free access to the lake and the withdrawal of such permission by a later generation perplexed the Court below.
Now, it appears to the Court that if a person — and I’m reverting back to the 40s now — if a person owned a piece of property on which there was a lake and deed up to and into the edge of the lake, and the people at that time were allowed to use that lake, that it is extremely difficult for the Court to now say that these folks can’t use it to some extent.
*653 So the Court ruled the Graybeals could use the “immediate area of their frontage of their property, and not to go out over the lake and beyond the immediate area.” But how far was the “immediate area”?
Now, what the immediate area is, is something I can’t define. But I don’t think they have a right to flaunt the other people who are expending considerable money in getting their property. I don’t think they have got a right to flaunt it, but I don’t think they are to be denied the minimal use of the water front that’s in front of their property, which would include either bathing or boating or swimming, or anything attendant to it, but not to use the surface of the water wherever they might want to use it.
The Chancery Court, as the Graybeals, thus succumbed to “the human penchant for confusing want with right, desire with entitlement, and the familiar with the necessary ...” Dycus v. Sillers, 557 So.2d at 487. The law expels such sentiment and decrees the Graybeals may not cross their property line without the Crenshaws’ permission.
IV.
Belatedly, the Graybeals claim easement by prescription and easement by implication. Neither of these issues was raised or litigated below. Beyond that, there is no serious question but that the Graybeals and their predecessors for years enjoyed anything but hostile relations with the Crenshaws, and their use was wholly permissive.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.