ACE EQUIPMENT SALES, INC., ET AL. *v.* THOMAS BUCCINO ET AL.
(AC 23383)

Schaller, Bishop and Dupont, Js.

Submitted on briefs October 20, 2003—officially released April 27, 2004

*Kirk D. Tavtigian, Jr.,* filed a brief for the appellants (named plaintiff et al.).

*Mark W. Dietz* filed a brief for the appellant (plaintiff Willington Fish and Game Club, LLC).

*Robert B. Cohen* and *Joseph B. Sappington* filed a brief for the appellees (defendant Thomas Buccino et al.).

*Robert Hisey,* pro se, *Jerzy Debski,* pro se, and *Peter Latincsics,* pro se, the appellees (defendants), filed a brief.

*Opinion*

DUPONT, J. The dispositive issue in this appeal is whether the owners of property abutting a pond, origi-

nally created by the erection of a dam and a spillway to impound the waters of a nonnavigable brook,[1] who are required to maintain the dam, have the right of shared, reasonable recreational use of the entire pond. The plaintiffs, Ace Equipment Sales, Inc. (Ace), Willington Fish and Game Club, LLC (WFGC, LLC), and Willington Fish and Game Club, Inc. (WFGC, Inc.), appeal from the summary judgment rendered by the trial court on the counterclaim of the defendants, Thomas Buccino, Irma Buccino (Buccinos),[2] the Hall's Pond Fly Fishing Club, Inc., Willington Industries, Inc., Jerzy Debski, Robert Hisey and Peter Latincsics.[3]

Both the plaintiffs and the defendants sought summary judgment. The plaintiffs, in their complaint, and the defendants, in their counterclaim, sought injunctive relief, a declaratory judgment[4] and damages. The court, *Sferrazza, J.*, denied the plaintiffs' motion for summary judgment and granted the defendants' motion, allowing the defendants reasonable recreational use of the body of water known as Hall's Pond in Willington and prohibiting the plaintiffs from interfering with such reasonable use. The court also ordered a hearing to determine the specifics of injunctive relief and damages. After a hearing, the court, *Levine, J.*, awarded the defendants common-law damages of $2 against the plaintiffs

---

[1] The waters of the brook are connected to the Willimantic River.

[2] The Buccinos are the owners of the abutting property, and the rights of the other defendants stem from the rights of the Buccinos as owners of their property.

[3] Ace and WFGC, Inc., were permitted by this court to file a separate brief from that of the other plaintiff, WFGC, LLC, which filed its own brief. All of the plaintiffs, however, adopt and incorporate the argument of both briefs. The defendants Debski, Hisey and Latincsics filed a separate brief from that of the Buccinos. The defendant's Hall's Pond Fly Fishing Club, Inc., and Willington Industries, Inc., did not file an appearance and are not involved in this appeal.

[4] The defendants did not seek a declaratory judgment as to the title of the bed of the pond, but a declaratory judgment as to their right to use the waters of the pond for recreational purposes.

WFGC, LLC, and WFGC, Inc., and as injunctive relief, ordered those same plaintiffs to remove any obstructions, including a fence that was constructed along a right-of-way of the Buccinos.[5]

The issues to be resolved on appeal are whether the Buccinos, owners of property adjacent to Hall's Pond, who have the obligation to maintain the dam, may use its waters for recreational purposes regardless of (1) whether they own the pond bed, (2) whether the pond is artificial or natural and (3) whether their deed is silent as to that specific use. We affirm the judgment of the trial court granting the motion for summary judgment in favor of the defendants.

Summary judgment shall be rendered if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003). In this case, a basic disagreement of the parties lies in what is or is not a material fact and whether such a fact is in dispute. We begin our discussion, therefore, with the undisputed facts found to be material by the trial court.

Ace, WFGC, LLC, and the Buccinos are successors in title to property surrounding Hall's Pond, a twenty acre body of water. Until the 1950s, Gardiner Hall, Jr., Co. (Hall) owned all of the property under the pond and all of the property abutting the pond. Hall's Pond is a man-made, nonnavigable pond. It was created by

---

[5] The right-of-way allowed the Buccinos to use a twenty-five foot passageway extending from the exterior line of a state highway to the westerly edge of the pond to gain access to the dam to perform maintenance and upkeep on the dam.

placing a dam in Conat Brook, some time prior to the conveyance by Hall of any of the land to the predecessors of the parties. Hall conveyed the property presently owned by the Buccinos to their predecessors in title in 1955. Hall conveyed the property presently owned by the plaintiffs to their predecessors in title in 1987. Ace, WFGC, LLC, and the Buccinos are the only owners of land abutting Hall's Pond.

WFGC, LLC, and WFGC, Inc., use the property for recreational fishing. WFGC, LLC, and WFGC, Inc., stock the pond with fish and use the pond for fishing, a right leased by WFGC, LLC, to WFGC, Inc. The defendants Hall's Pond Fly Fishing Club, Inc., Debski, Hisey and Latincsics began to use the Buccinos' property for access to fishing and other recreational uses of the pond, with the permission of the Buccinos.

The plaintiffs erected a twelve foot high fence obstructing the Buccinos' access to a twenty-five foot right-of-way, acquired by the Buccinos in their deed, to the Buccinos' mill.[6] The Buccinos have the deeded right to use the water from the pond for industrial purposes so as to operate a mill and factory downstream. The Buccinos have an obligation to maintain the dam and are the subject of an order of the department of environmental protection to keep the dam in working order. The court, in granting the motion for summary judgment in favor of the defendants, specifically stated that it did not resolve the location of the precise boundary between the Buccinos' and Ace's land.[7]

---

[6] WFGC, LLC, in its separate brief, argues that the court should not have ordered the removal of the fence that it constructed on the defendants' right-of-way. Because we conclude that the Buccinos have the right to use the pond for recreational purposes, it follows that the fence must be removed for them to gain access to the dam and the adjoining pond. Furthermore, the deed to the Buccinos gave them the right to use the passageway. We need not discuss that issue further.

[7] Because the court did not grant a declaratory judgment, sought by the plaintiffs, that the Buccinos do not own any land underlying the pond, that issue, inferentially, also has not been decided. Although the issue of

The disagreement of the parties lies, in part, in what is or is not a material fact in dispute. The plaintiffs argue that ownership of the bed under the pond is a material fact in dispute. They argue that, due to their ownership of the land beneath the pond waters, they have the exclusionary right to the use of the entire pond for recreational purposes. The plaintiffs also argue that the same riparian rights that might accrue to an abutter of land on a natural body of water are not available to the Buccinos because of the plaintiffs' alleged ownership of all of the land beneath the pond. The court determined that the ownership of the bed of the pond was a fact in dispute but was not material. The court ruled that regardless of that ownership, the Buccinos have riparian rights in the use of the waters of the pond as the owners of abutting land. The court held that, as a matter of law, owners of land abutting a nonnavigable body of water have riparian or littoral rights that are not dependent on the genesis of the body of water as artificial or natural, or on the ownership of the subaqueous land.

With respect to the defendants' counterclaim, we must determine whether, on the undisputed material facts, the defendants were entitled to a judgment as a matter of law. We are solely concerned with whether the Buccinos have the right to shared reasonable use of nonnavigable water for recreational purposes, such

ownership of subaqueous land has not yet been resolved, the plaintiffs have appealed properly from a final judgment for the defendants on their counterclaim. The defendants, in their counterclaim, sought only a determination of the Buccinos' rights to use the pond, and that issue was decided by the court, *Sferrazza, J.* Practice Book § 61-2 provides that a judgment that is rendered on an entire counterclaim is an appealable final judgment. The claims of title to the land beneath the pond, and the location of boundaries between the Buccinos' land and that of Ace remain unresolved and pending in the plaintiffs' complaint. See M. Kravitz & E. Amarante, "Key Differences Between Civil Appeals in the Second Circuit and Connecticut's Appellate Courts," 76 Conn. B.J. 149, 160–61 (2002).

as swimming, boating and fishing, as the owners of land abutting the water, regardless of the ownership of the water's bed or how the body of water was created, or whether a deed specifically granted that right, where the level of the body of water must be maintained by the abutting owner. No Connecticut appellate case has definitively decided that issue. Cases involving the ownership of the water itself (right to take ice), or ownership of the subaqueous land over which the water flows (right to mine, salvage or extract sand and gravel) or the use of the bed (right to construct docks or wharves) are not controlling. See *Schroder* v. *Battistoni*, 151 Conn. 458, 199 A.2d 10 (1964); *Mad River Co.* v. *Pracney*, 100 Conn. 466, 123 A. 918 (1924); *Turner* v. *Selectmen of Hebron*, 61 Conn. 175, 22 A. 951 (1891); *Mill River Woolen Mfg. Co.* v. *Smith*, 34 Conn. 462 (1867); *Wadsworth* v. *Tillotson*, 15 Conn. 366 (1843). We are also not concerned with a dispute about what is a reasonable use of surface waters when two or more owners share the use of a body of water. See *Lake Williams Beach Assn.* v. *Gilman Bros. Co.*, 197 Conn. 134, 496 A.2d 182 (1985).[8]

Owners of property abutting a water surface are often called riparian owners or, alternatively, littoral owners.[9]

[8] The present case is not about whether the fishing or other recreational activity by the plaintiffs or the defendants infringes on the reasonable use by the other parties. See *Harvey Realty Co.* v. *Wallingford*, 111 Conn. 352, 359, 150 A. 60 (1930). It solely concerns whether the Buccinos have the right, with the other owners of abutting land, to use the pond for recreational purposes.

[9] The difference in terminology as between "riparian" or "littoral" does not affect the substantive rights of the defendants. See *Water Street Associates Ltd. Partnership* v. *Innopak Plastics Corp.*, 230 Conn. 764, 769 n.5, 646 A.2d 790 (1994) (proper term for property abutting lake is littoral); but see also *Harvey Realty Co.* v. *Wallingford*, 111 Conn. 352, 358, 150 A. 60 (1930) (uses riparian to describe land bounding lake, river or other watercourse); see also *Rochester* v. *Barney*, 117 Conn. 462, 465, 169 A. 45 (1933) (uses term littoral rights to refer to land abutting the ocean). Black's Law Dictionary (7th Ed. 1999) defines riparian as "[o]f, relating to, or located on the bank of a river or stream (or occasionally another body of water, such as a lake) . . . ."

This opinion refers to the rights of the Buccinos as riparian rights. See R. Reis, Connecticut Water Law: Judicial Allocation of Water Resources (1967) p. 24. In Connecticut, a riparian right to use nonnavigable water does not create ownership of the water, but rather allows the use of the water for bathing and other recreational uses. *Harvey Realty Co.* v. *Wallingford*, 111 Conn. 352, 360, 150 A. 60 (1930).

I

The plaintiffs claim that ownership of the pond bed under a nonnavigable lake or pond gives the owner exclusionary rights of use. The plaintiffs claim that the court incorrectly concluded that although there was a genuine factual dispute as to the ownership of the pond bed, it was not a material fact. The court determined that the "issue of ownership of subaqueous land is not dispositive," and relied on the fact that the Buccinos own the land on which the dam creating the pond is constructed and that the land abuts the pond. The court relied on *Harvey Realty Co.* v. *Wallingford*, supra, 111 Conn. 352, to hold that the Buccinos' status as abutters of the pond gave them the right to recreational use of the pond.[10]

In general, each riparian owner, his intimates and guests, are given the right of reasonable use of the entire body of water, subject to the rights of the other riparian owners. Id., 359; 4 Restatement (Second), Torts, Riparian Rights § 843 (1991). Riparian rights are usually given to the owners of lands that touch on the watercourse. *Harvey Realty Co.* v. *Wallingford*, supra, 111 Conn. 359. No Connecticut appellate decision has

---

[10] We do not perceive this case as requiring a choice between the application of "civil law" or "common law," as discussed by the dissent. We rely instead on existing Connecticut appellate case law, as discussed in this decision, the particular facts, including the obligation of the defendants to maintain the water level of the pond, and the Restatement of Torts.

squarely ruled on the rights of riparian owners to use surface waters for recreational purposes if others own the vast majority or all of the pond bed, nor has any appellate court decision foreclosed the issue of whether ownership of subaqueous land is a material fact in issue when summary judgment is sought in a riparian rights case. In this case, the Buccinos did not seek a determination of the ownership of the bed of the pond, but solely sought a determination of their right to use the surface waters of the pond for recreational purposes as riparian owners.

Although no definitive appellate case has decided the precise issue before us, some are instructive. Mill owners can obtain the right to raise the waters of a watercourse by constructing a dam to furnish water power to run a mill when they do not own the land over which the waters run. See, e.g., *Turner* v. *Selectmen of Hebron,* supra, 61 Conn. 186–87. Those owners, then, apodictically, have the right to keep the soil of the pond covered with water, at least for industrial purposes.

In *Gager* v. *Carlson,* 146 Conn. 288, 290, 150 A.2d 302 (1959), the defendant, by way of counterclaim, sought an injunction to prevent the plaintiff from interfering with his use of water, created by a dam, for boating, swimming and fishing. The defendant owned a sawmill, operated by water power, and had the rights to make repairs to the banks of the watercourse and to maintain the level of the water. Neither he nor the owner of the bed of the water had exclusive rights to the use of the water, but both had the right to use and to enjoy the water as long as the property over which the water flowed was not damaged or altered. Id., 295. In *Gager,* the defendant did not prove that he owned any of the land under the water. It was nevertheless held, on the basis of the facts of the case, that the defendant had nonexclusive recreational use of the pond. Also, the owner of a flowage easement has a shared, nonexclu-

sive right to recreational use, with the owners of the submerged land.[11] See *Great Hill Lake, Inc.* v. *Caswell,* 126 Conn. 364, 11 A.2d 396 (1940).

Riparian rights exist as inherent rights incident to ownership of land contiguous to or traversed by a watercourse, and each riparian owner has an equal right with other such owners to make reasonable use of it for recreational purposes. 78 Am. Jur. 2d, Waters §§ 32-34 (2002). A riparian owner has the right of reasonable use of water with other riparian owners. *Lake Williams Beach Assn.* v. *Gilman Bros. Co.,* supra, 197 Conn. 139.

The owner of a dam usually can create an artificial pond or enlarge a natural one. He may "use the water for any purpose, provided he does not thereby interfere with the rights of other proprietors either above or below him. Such a dam and water-privilege, with its incidental rights, constitutes property favored by the law since earliest times." *DeWitt* v. *Bissell,* 77 Conn. 530, 535, 60 A. 113 (1905).

If title extends only to the edge of a private watercourse but does not include the water, the titleholder has a right to use the surface in common with other riparian owners in any way that is not a trespass on the bottom of the water and can object to any obstruction of the water by another that interferes with his use. 4 Restatement (Second), supra, § 843, comment (e).

On the basis of Connecticut cases and relevant authority previously cited, we adopt the following language of a Minnesota case, that "riparian rights . . . are an incident, not of ownership of the bed of the lake, but of the ownership of the shore, and . . . an abutting or riparian owner of a lake, suitable for fishing, boating,

[11] Ballentine's Law Dictionary (3d Ed. 1969) defines a flowage easement as the right to overflow land of another to accumulate and maintain an artificial body of water, acquired either by grant or prescription, or reserved in a conveyance.

hunting, swimming, and other domestic or recreational uses to which our lakes are ordinarily put in common with other abutting owners, has a right to make such use of the lake over its entire surface, in common with all other abutting owners, provided such use is reasonable and does not unduly interfere with the exercise of similar rights on the part of other abutting owners . . . regardless also of the ownership of the bed thereof." *Flynn* v. *Beisel*, 257 Minn. 531, 539, 102 N.W.2d 284 (1960); see *Johnson* v. *Seifert*, 257 Minn. 159, 168–69, 100 N.W.2d 689 (1960); see also *Beach* v. *Hayner*, 207 Mich. 93, 95, 173 N.W. 487 (1919); *Sterling* v. *Jackson*, 69 Mich. 488, 508, 37 N.W. 845 (1888).

The case law of Minnesota and Michigan is most similar to the appellate case law in Connecticut. We conclude that owners of subaqueous land under a pond or lake may not prevent the use, by abutting owners, who control the existence of the pond itself, for recreational purposes of the surface water above the bed of a pond that they own.[12]

The court correctly held that the ownership of the bed of Hall's Pond was not a material fact in this case and that the defendants have the right to use the pond for reasonable recreational purposes in common with the owners of the bed of the pond.

---

[12] We are not concerned in this case with disputes between two or more owners of subaqueous soil to determine whether ownership of different portions of that soil are entitled to the shared use of the entire body of water or only that portion of the lake or pond over their portion of the bed owned. See, e.g., *Duval* v. *Thomas*, 114 So. 2d 791, 795 (Fla. 1959); R. Reis, Connecticut Water Law: Judicial Allocation of Water Resources, supra, p. 90 (subaqueous owners given recreational use of entire pond); but see also *Wehby* v. *Turpin*, 710 So. 2d 1243, 1247 (Ala. 1998); *Wickouski* v. *Swift*, 203 Va. 467, 471, 124 S.E.2d 892 (1962) (owners of subaqueous soil have exclusive right to that portion of lake surface above their subaqueous soil). The dispute in this case is between the alleged owners of all of a pond bed and the owners of land abutting a pond, which was created by the erection of a dam on their land and that must be maintained by them.

## II

The plaintiffs claim that riparian rights do not attach to merely abutting landowners, no matter the natural or artificial character of the lake or pond, if no portion of the bed of the pond is owned by an abutting landowner. They further allege that an abutting landowner could acquire the right of the continuation of the existence of a man-made body of water only if the landowner can show estoppel and detrimental reliance on the existence of a claimed riparian right.[13]

The court, in its memorandum of decision, correctly stated that "if a natural stream is damned so as to form a lake or pond permanently or for an extended period of time, the artificial lake or pond is treated the same as a natural one as far as riparian rights are concerned." We conclude that Connecticut decisional law indicates that because of the long-term existence of Hall's Pond for nearly half of a century, the pond became a natural waterway.[14]

Both natural and artificial lakes have been used historically in Connecticut to generate power to run mills. If a natural stream is damned for an extended period of time, the resulting lake is treated in the same way as a natural pond for riparian rights. See *DeWitt* v. *Bissell*, supra, 77 Conn. 535. The owner of land on

---

[13] This appeal does not involve any claim by the Buccinos that the existence of the pond should be continued by the plaintiffs. In fact, it is the Buccinos who control the existence of the pond because of their duty to keep the dam in good repair and to maintain the natural water mark of the pond. We do not, therefore, discuss that issue.

[14] Although not critical to our holding, the definition of an artificial body of water may not have included Hall's Pond even when it was originally created. The comments to § 842 of 4 Restatement (Second), Torts, define a lake or pond as natural even if formed by the artificial obstruction of a stream or by the diversion of a stream. Such water is considered a segment of a watercourse. If a body of water, such as a lake or pond, is created along the general course of a previously existing body of water, it may not be an "artificial" body of water.

which a dam is constructed may "use the water for any purpose, provided he does not thereby interfere with the rights of other proprietors either above or below him. Such a dam and water-privilege, with its incidental rights, constitutes property favored by the law since earliest times." Id. An artificial body of water may become natural by its existence in the altered condition for a long period of time. *Adams* v. *Manning*, 48 Conn. 477, 488 (1881).

We agree with the trial court that there is no distinction to be made between a natural and an artificial body of water and the riparian rights that accrue, at least if the "artificial" body has existed for a long period of time. We conclude that the recreational riparian rights of the Buccinos, who must maintain the dam to achieve the resultant impoundment of water, are not obliterated because the pond may have been artificial when created.

### III

The plaintiffs also claim that because the Buccinos' chain of title grants them the right to use the pond for industrial purposes, that express grant impliedly prohibits other rights with respect to the use of the pond. We disagree.

In support of their position, the plaintiffs rely on the Buccinos' deed, which, they correctly point out, expressly grants a right to use the pond for industrial purposes. They also cite *Miller* v. *Lutheran Conference & Camp Assn.*, 331 Pa. 241, 200 A. 646 (1938), in support of their proposition. In *Miller*, a deed granted the right to boat and fish, but not the right to bathe in a body of water. The court held that because the deed granted some rights, the deed, by implication, excluded other rights. Id., 247. *Miller* also stated, in dicta, that a property owner of land bordering on a nonnavigable lake or pond, the pond being located entirely on land

owned by others, has no riparian rights as to the lake and that any attempt to use the lake would be just as much of a trespass as if the land were dry. Id., 246–47. Because *Miller* held that no riparian rights attached to landowners abutting a lake covering land owned entirely by another party, the only method for such abutting landowners to achieve any rights to the lake would be by an express grant or contract. We have concluded that the Buccinos have riparian rights by virtue of their ownership of land abutting Hall's Pond and their obligation to maintain the dam creating the pond, not by express grant or lack thereof, and, therefore, do not agree that *Miller* is apposite.

Water rights appurtenant to abutting land pass by conveyance of the land even though the deed does not specifically mention water rights. 78 Am. Jur. 2d, supra, § 18. If the language of an easement, for example, to use water for industrial purposes, is broad enough to permit any reasonable use of a pond created by a dam, it may be used for recreational purposes even though at the time of the creation of the easement, the parties probably contemplated that the major purpose would be to furnish water to a sawmill for power. See *Gager v. Carlson*, supra, 146 Conn. 297–98.

The Buccinos' deed gave them "the right . . . to take and use water from said pond through said penstock,[15] and the *further* right to take and use water from said pond that may be necessary for industrial purposes and operations in the mill and factory buildings." Thus, the Buccinos acquired two separate rights, the right to use water through a penstock and the right to use water for industrial purposes. Although it is not clear what the first right might encompass, it is clear that it is a right in addition to the right to use the water for industrial purposes.

---

[15] A penstock is a gate or sluice for controlling a flow of water.

The deed also states that "(t)he right to draw the pond down below the natural water mark is *not* granted." (Emphasis added.) Thus, when the grantor of the Buccinos wanted to exclude a right, it explicitly did so. There is no such exclusion in the deed for riparian rights. We interpret the entire language of the deed broadly and conclude that the deed does not impliedly preclude the defendants from using the pond for recreational as well as industrial purposes.

We conclude that there was no material fact in dispute and that the defendants were entitled to judgment as a matter of law. The defendants' motion for summary judgment was, therefore, properly granted.

The judgment is affirmed.

In this opinion BISHOP, J., concurred.

SCHALLER, J., dissenting. In determining that the trial court properly rendered summary judgment in favor of the defendants, Thomas Buccino and Irma Buccino, the majority concludes that the ownership of the subaqueous land was not a material fact. To reach that conclusion, in the absence of definitive appellate case law in Connecticut concerning recreational use of private bodies of water, the majority adopts as the law of Connecticut a doctrine known as *civil law rule* that has been applied by several state courts, in particular, the courts of Minnesota and Michigan. Although I agree that, given the dearth of pertinent appellate case law in Connecticut, we must look to other sources, I respectfully disagree with the majority's choice of doctrine. I believe that, under the circumstances of this case, the appropriate doctrine is the *common-law rule*, which has been adopted by numerous other state appellate courts, including courts in New Jersey, Pennsylvania and Florida, and which is acknowledged in at least one state as the majority rule. See *Wehby* v. *Turpin*, 710

So. 2d 1243, 1247–50 (Ala. 1998). I believe that the common-law rule is more widely used and produces a more sensible and fair result in situations like the present one. In addition, it is fully consistent with a well reasoned Superior Court decision, *Peck* v. *Edelman*, Superior Court, judicial district of Windham at Putnam, Docket No. 56833 (July 21, 2000) (27 Conn. L. Rptr. 633) (adopting view that subaqueous land ownership necessary to obtain riparian rights).

In *Baker* v. *Normanoch Assn., Inc.*, 25 N.J. 407, 136 A.2d 645 (1957), the New Jersey Supreme Court held that "[t]he rule in this jurisdiction is that the general public [has] no rights to the recreational use of a private lake, such rights being exclusive in the owner of the bed. . . . And while the test for distinguishing between public and private bodies of water is varied in the several states (the majority using the test of navigability in fact) the great weight of authority supports the proposition that small inland lakes are susceptible of private ownership, at least to the extent that the owner or owners of the bed have the sole rights to the recreational uses of the waters. *Lembeck* v. *Nye*, 47 Ohio St. 336; 24 N.E. 686, 8 L.R.A. 579 (Sup. Ct. 1890); *Beckman* v. *Kreamer*, 43 Ill. 447, 92 Am. Dec. 146 (Sup. Ct. 1867); *Marsh* v. *Colby*, 39 Mich. 626, 33 Am. Rep. 439 (Sup. Ct. 1878); *Decker* v. *Baylor*, 133 Pa. St. 168, 19 A. 351 (Sup. Ct. 1890); *Turner* v. *Selectmen of Hebron*, 61 Conn. 175, 22 A. 951, 14 A.L.R. 386 (Sup. Ct. Err. 1891); *Tripp* v. *Richter*, 158 App. Div. 136, 142 N.Y.S. 563 (App. Div. 1913); *Miller* v. *Lutheran Conference & Camp Ass'n.*, 331 Pa. St. 241, 200 A. 646, 130 A.L.R. 1245 (Sup. Ct. [1938]); *Akron Canal & Hydraulic Co.* v. *Fontaine*, 72 Ohio App. 93, 50 N.E.2d 897 (Ct. App. 1943); *Patton Park* v. *Pollack*, 115 Ind. App. 32, 55 N.E.2d 328 (Sup. Ct. 1944); Annotation, 'Inland Lakes—Boating and Fishing,' 5 A.L.R. 1056 (1920); 2 American Law of Property, § 9.49, p. 481 (1952); 1 Thompson on Real Property,

§ 78, p. 93 (1939); Note, 'Extent of Private Rights in Non-navigable Lakes,' 5 U. of Fla. L. Rev. 166 (1952).

"There have been a few recent departures from the general rule in some of the western states. *Elder* v. *Delcour*, 364 Mo. 835, 269 S.W.2d 17, 47 A.L.R.2d 370 (Sup. Ct. 1954); Wash. U.L. Quarter., 1955, pp. 97–99; 35 Ore. L. Rev. 137 (1956), 40 Minn. L. Rev. 88 (1955); *Coleman* v. *Schaeffer*, 163 Ohio St. 202, 126 N.E.2d 444 (Sup. Ct. 1955); 30 Tul. L. Rev. 332 (1956). See also *Lamprey* v. *Metcalf*, 52 Minn. 181, 53 N.W. 1139, 18 L.R.A. 670 (Sup. Ct. 1893) (dicta).

"The minority view stems from jurisdictions with great numbers of inland waterways where hunting and fishing have become major industries. See 28 Ore. L. Rev. 267, 281 (1949); Note, supra, 5 U. of Fla. L. Rev. Whatever its merit under local circumstances of those jurisdictions, as previously indicated the settled proposition in this State is that the general public has no rights to the recreational use of private lakes." (Citations omitted.) *Baker* v. *Normanoch Assn., Inc.*, supra, 25 N.J. 415–16.

The Supreme Court of Pennsylvania considered the rights of abutting owners of lakes and ponds in *Miller* v. *Lutheran Conference & Camp Assn.*, 331 Pa. 241, 247, 200 A.2d 646 (1938). In that case, the defendant "was the owner of a tract of ground abutting on the lake for a distance of about 100 feet . . . ." Id., 243–44. The plaintiffs had sought an injunction to prevent the defendant from trespassing on the lands covered by the water. Id., 244. The court, applying the common-law rule, held that "[o]rdinarily, title to land bordering on a navigable stream extends to low water mark subject to the rights of the public to navigation and fishery between high and low water, and in the case of land abutting on creeks and non-navigable rivers to the middle of the stream, but in the case of a non-navigable

lake or pond where the land under the water is owned by others, no riparian rights attach to the property bordering on the water, and an attempt to exercise any such rights by invading the water is as much a trespass as if an unauthorized entry were made upon the dry land of another." Id., 247.

In applying the common-law rule to a similar situation, the Alabama Supreme Court determined: "We are bound to follow the majority common law rule . . . as the rule of law governing decisions in this state. . . . [W]e apply the common law rule and hold that the owners of land extending beneath artificial or man-made lakes, not navigable as a matter of law, have surface-water rights only in the surface waters above their land. We conclude that the [plaintiffs], in the absence of some covenant, agreement, or statute to the contrary, have no right to use that portion of the lake beyond the boundaries of their own land."[1] (Citation omitted.) *Wehby v. Turpin*, supra, 710 So. 2d 1249; see also *Black v. Williams*, 417 So. 2d 911, 912 (Miss. 1982) (holding that owners of subaqueous lands only have right to use portions of lake above their land).

Similarly, in *Anderson v. Bell*, 433 So. 2d 1202, 1204 (Fla. 1983), the Supreme Court of Florida stated that "we now hold that the owner of property that lies adjacent to or beneath a man-made, non-navigable water body is not entitled to the beneficial use of the surface waters of the entire water body by sole virtue of the fact that he/she owns contiguous lands." The court went on to explain the policy considerations behind the rule it adopted. "Because the construction of a man-made

---

[1] Interestingly, Alabama is, by statutory pronouncement, a "common law" state. Ala. Code § 1-3-1 (1999) provides: "The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature."

water body often involves the expenditure of substantial sums of money and the expense is not, as a rule, divided proportionately among the various abutting owners, the individual making the expenditure is justified in expecting that superior privileges will inure to him in return for his investment. In contrast, the abutting owners to a natural water body probably invest proportionally equal amounts for the increased value of the water front property. While there are certainly exceptions to this general scenario, we believe that the [civil law] rule will more often result in an injustice, than in a correct decision." Id., 1205. The court also explained that "[a]nother concern of ours involves the difficulty in limiting [the civil rule]: Does an adjoining landowner to a drainage ditch have the right to follow the water surface and use all adjacent waters? Of equal concern would be the application of this rule to artificial alterations to water-courses. . . . Further, we are concerned that a contrary rule would place the owners of adjacent land in an unequal bargaining position with respect to flowage rights sought by the person constructing the lake. Adjacent landowners would be in a position to set exorbitant prices for the flowage rights on their land knowing that they would receive full beneficial use of the lake irrespective of the price. This, we believe, may also frustrate the development of these waters, which is capital improvement we should not discourage." Id., 1206.

The majority relies, in part, on 4 Restatement (Second) of Torts, Riparian Rights § 843, comment (e) (1991), which addresses the impact of ownership of subaqueous lands on water use. Notably, although the Restatement would allow the use, the use would be severely restricted because it *could not* "involve a trespass on the land underlying the water." Id. That would, seemingly, make ingress and egress from the water very difficult. In addition, one commentator has explained

that courts "must be careful in relying on the Restatement (Second) of Torts to resolve the uncertainties that abound in most states under riparian rights theory . . . [because] the Restatement (Second) substantially departs in significant ways from established riparian rights law." 1 R. Beck, Waters and Water Rights, (1991 Ed.) § 6.01 (c), pp. 6-85–6-86. Beck explains that this deviation is attributable to the reporter's predilection to "make water more available for different kinds and places of use than was possible under traditional riparian rights." Id., § 6.01 (c), p. 6-88. The Restatement (Second) thus deviates from the established law to "enlarge the areas that qualify as riparian in order to allow the use of water over the widest possible range of lands and uses." Id., § 6.01 (c), p. 6-89. We, therefore, should not rely on the Restatement (Second) of Torts in this case.

I believe that the common-law rule, as adopted in the previously discussed cases and the policy considerations explained therein, best fits the needs of the citizens of Connecticut. Further, one of the leading commentators on Connecticut water rights has interpreted our case law to indicate that we have adopted the common-law rule. See R. Reis, Connecticut Water Law: Judicial Allocation of Water Resources (1967) pp. 88–89. Reis states that "[w]here bed ownership has been severed from the upland, the bed owner may control the use of both the bed and the surface of a pond or lake. . . . Ownership of a lake bed has also been held in Connecticut to include exclusive control over surface water use." Id., 89. By virtue of the policy change announced by the majority today, we sweep away the reliance by property owners on the concept that ownership of all the subaqueous lands conveys exclusive riparian rights. Accordingly, because ownership of the subaqueous land is a material fact, I conclude that sum-

mary judgment was inappropriate in this case, and I would remand it for further proceedings.

For the foregoing reasons, I respectfully dissent.