ACE EQUIPMENT SALES, INC., ET AL. *v.* THOMAS BUCCINO ET AL.
(SC 17226)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

---

Argued January 13—officially released April 5, 2005

*Kirk D. Tavtigian, Jr.,* with whom was *David F. Sherwood,* for the appellants (plaintiffs).

*Francis A. Miniter,* for the appellee (named defendant).

*Robert Hisey,* pro se, *Peter Latincsics,* pro se, and *Jerzy Debski,* pro se, the appellees (defendant Robert Hisey et al.), filed a brief.

*Donald E. Frechette, William E. Lohnes, Ben Robbins,* pro hac vice, and *Andrew Grainger,* pro hac vice, filed a brief for the New England Legal Foundation as amicus curiae.

*Opinion*

KATZ, J. The principal issue in this certified appeal[1] is whether the owners of property abutting a man-made,

---

[1] We granted the plaintiffs' petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the plaintiffs, owners in fee simple of a man-made, nonnavigable pond, cannot

nonnavigable pond have the right to use the pond for recreational purposes when the majority of the land beneath the pond is privately owned by another party. The plaintiffs, Ace Equipment Sales, Inc. (Ace), Willington Fish and Game Club, LLC (Willington, LLC), and Willington Fish and Game Club, Inc. (Willington, Inc.), appeal from the judgment of the Appellate Court that affirmed the judgment of the trial court rendering summary judgment in favor of the defendants. *Ace Equipment Sales, Inc.* v. *Buccino*, 82 Conn. App. 573, 848 A.2d 474 (2004). The plaintiffs claim that the Appellate Court improperly concluded that the defendants, Thomas Buccino and Irma Buccino,[2] have a riparian right to use the pond for recreational purposes as abutting landowners. They further claim that, irrespective of a riparian right, the Buccinos' deed prohibits them from entering and using the pond for recreational purposes because its language restricts their use of the pond to industrial purposes.[3] We agree with the plaintiffs and, accordingly, we reverse the judgment of the Appellate Court.

The record reveals the following facts and procedural history relevant to our disposition of this appeal. Hall's

prohibit the abutting owners from entering onto the pond?" *Ace Equipment Sales, Inc.* v. *Buccino*, 270 Conn. 909, 853 A.2d 525 (2004).

[2] Thomas Buccino, Irma Buccino, the Hall's Pond Fly Fishing Club, Inc., Willington Industries, Inc., Jerzy Debski, Robert Hisey and Peter Latincsics are the defendants in this action. The Buccinos are the owners of the abutting property, and the rights of the other defendants stem from the rights of the Buccinos as owners of that property. Hereinafter, we will refer to the Buccinos by name and we will refer to the other defendants as the licensees. References herein to "the defendants" are to the Buccinos and the licensees collectively.

[3] The Buccinos have asserted that the plaintiffs cannot make the claim regarding the restrictive language of the deed because it is outside the scope of the certified question; see footnote 1 of this opinion; while at the same time they attempt to invoke their rights under the deed. The Buccinos cannot have it both ways. Moreover, whether the Buccinos' rights are limited by the deed is within the scope of the certified question.

Pond (pond) is a twenty acre body of water in the town of Willington that was formed by the erection of a dam and spillway at its southwesterly end, thereby impounding the waters of a nonnavigable brook flowing from the Willimantic River. Until the 1950s, Gardiner Hall, Jr., Company (Hall), owned all of the property under and abutting the pond. In December, 1955, Hall conveyed the dam and mill property downstream of the pond to the Buccinos' predecessors in title, and the Buccinos thereafter acquired the dam and mill property in February, 1967. The deed by which the Buccinos acquired the dam and mill property conveyed easement flowage rights to use pond water for industrial purposes and for the needs of the mill and factory on the property, along with the obligation to maintain the dam and the water level of the pond. The deed also conveyed a twenty-five foot wide right-of-way over Hall's property to the mill.

Hall retained the land upstream from the dam, which included all or most of the pond bed, until July, 1987, when Hall conveyed it to the plaintiffs' predecessors in title. In July, 1996, that parcel subsequently was conveyed to Willington, LLC, which then conveyed all but one-half acre of the pond bed to Ace in September, 1996. Each of the relevant deeds describe the pond bed in metes and bounds, and it is undisputed that the plaintiffs obtained, pursuant to the deeds, at least 99 percent of the land beneath the pond. Ace licenses the pond for recreational fishing to Willington, Inc., for its members only, of which there are no more than thirty-five, and Willington, Inc., in turn stocks the pond with fish. Ace and Willington, Inc., never have opened the pond to the public, and the plaintiffs never have given the Buccinos permission to use the pond for recreational purposes.

Although the extent of the Buccinos' industrial use of the pond is unclear from the record, it reflects that

their recreational use amounted to fishing in the pond twice—both times from the land—and swimming in the pond once. In 1999, the Buccinos began leasing the rights to use the pond for recreational purposes to the licensees; see footnote 2 of this opinion; and their tenants and guests. Although the Buccinos have no further intention of using the pond themselves for recreational purposes, they have indicated that they would be willing to license as many as 200 people to use the pond for such purposes. Consistent with their intended recreational use, either the Buccinos or the licensees placed a boat dock on the pond, from which they have launched boats and fished in the pond.

In January, 2000, the plaintiffs commenced this action, seeking, inter alia, injunctive relief from the defendants from entering onto or using the pond for recreational purposes, a declaratory judgment prohibiting the defendants from trespassing on the plaintiffs' property, a declaratory judgment that the Buccinos own no part of the pond bed, and damages. In the spring of 2000, the plaintiffs erected a twelve foot wide fence along the edge of the pond, located approximately twenty-two feet from the pond's edge, and have since taken similar steps leading to the obstruction of the defendants' access to their right-of-way and the pond. The defendants denied the plaintiffs' allegation that the Buccinos owned no part of the pond bed, and filed a counterclaim seeking injunctive relief to bar the plaintiffs from interfering with the defendants' recreational use of the pond, and access to the pond generally, a declaratory judgment as to their right to use the pond for recreational purposes, and damages. Thereafter, the plaintiffs moved for summary judgment on their complaint, and the defendants moved for summary judgment on their counterclaim. The trial court denied the plaintiffs' motion for summary judgment and granted the defendants' motion as to liability only, declaring

that the defendants had the right to use the pond for recreational purposes and prohibiting the plaintiffs from interfering with such use.[4] The court then ordered a hearing to determine the scope of injunctive relief and damages. After the hearing, the trial court, *Levine, J.*, awarded the defendants common-law damages of $2, and ordered the plaintiffs to remove any obstructions interfering with the defendants' access to the pond and mill.

The plaintiffs subsequently appealed to the Appellate Court, which affirmed the trial court's judgment. *Ace Equipment Sales, Inc.* v. *Buccino*, supra, 82 Conn. App. 587. The Appellate Court, relying on the Restatement (Second) of Torts, Riparian Rights § 843[5] and case law

---

[4] "Because the [trial] court did not grant a declaratory judgment, sought by the plaintiffs, that the Buccinos do not own any land underlying the pond, that issue, inferentially, also has not been decided. Although the issue of ownership of subaqueous land has not yet been resolved, the plaintiffs have appealed properly from a final judgment for the defendants on their counterclaim. The defendants, in their counterclaim, sought only a determination of the Buccinos' rights to use the pond, and that issue was decided by the court, *Sferrazza, J.* Practice Book § 61-2 provides that a judgment that is rendered on an entire counterclaim is an appealable final judgment. The claims of title to the land beneath the pond, and the location of boundaries between the Buccinos' land and that of [the plaintiffs] remain unresolved and pending in the plaintiffs' complaint. See M. Kravitz & E. Amarante, 'Key Differences Between Civil Appeals in the Second Circuit and Connecticut's Appellate Courts,' 76 Conn. B.J. 149, 160–61 (2002)." *Ace Equipment Sales, Inc.* v. *Buccino*, supra, 82 Conn. App. 577–78 n.7.

[5] The Appellate Court majority relied on the Restatement (Second), which provides in relevant part: "In some cases . . . the title to the land may extend only to the edge of a watercourse or lake . . . . When this severance exists, the owner of the tract touching but not including the water has rights to use the surface in common with other riparian proprietors . . . to use the water in any way that does not involve a trespass on the land underlying the water, and to object to an unprivileged taking or obstruction of the water by another that interferes with his use." 4 Restatement (Second), Torts, Riparian Rights § 843, comment (e), p. 195 (1979); see *Ace Equipment Sales, Inc.* v. *Buccino*, supra, 82 Conn. App. 582. In his dissenting opinion, Judge Schaller noted that, although the Restatement (Second) would allow the use sought by the defendants, one must also realize that "the use would be severely restricted because it *could not* involve a trespass on the land underlying the water. . . . That would, seemingly, make ingress and egress

on riparian rights from Minnesota and Michigan,[6] concluded that the trial court properly had determined that ownership of property abutting the pond is sufficient to establish a riparian right to use the pond for reasonable recreational purposes. Id., 582–83. The court noted that the right to use the pond for such purposes also could stem from the Buccinos' ownership and maintenance of the dam that controls the pond's existence. Id., 581–82. The court further concluded that there is no distinction between the riparian rights afforded to a landowner whose property abuts a natural body of water and the rights afforded to a landowner whose property abuts a man-made body of water, at least to the extent that the man-made body has existed for a long period of time. Id., 585. The Appellate Court held that, because

from the water very difficult." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Ace Equipment Sales, Inc.* v. *Buccino*, supra, 591.

We note that the Restatement (Second) has been criticized for its vast departures from well established riparian rights law. 1 R. Beck, Waters and Water Rights (2001 Replacement Volume) § 6.01 (c), pp. 6-85 through 6-86 ("One must be careful in relying on the Restatement (Second) . . . to resolve the uncertainties that abound in most states under riparian rights theory. . . . [It] departs in significant ways from established riparian rights law. Only time will tell whether these departures will be followed by the courts of the different states."). In the absence of persuasive justification, we decline to follow § 843 of the Restatement (Second) in the present case.

[6] The Appellate Court embraced the following principle adopted in Minnesota and Michigan: " '[R]iparian rights . . . are an incident, not of ownership of the bed of the lake, but of the ownership of the shore, and . . . an abutting or riparian owner of a lake, suitable for fishing, boating, hunting, swimming, and other domestic or recreational uses to which our lakes are ordinarily put in common with other abutting owners, has a right to make such use of the lake over its entire surface, in common with all other abutting owners, provided such use is reasonable and does not unduly interfere with the exercise of similar rights on the part of other abutting owners . . . regardless also of the ownership of the bed thereof.' *Flynn* v. *Beisel*, 257 Minn. 531, 539, 102 N.W.2d 284 (1960); see *Johnson* v. *Seifert*, 257 Minn. 159, 168–69, 100 N.W.2d 689 (1960); see also *Beach* v. *Hayner*, 207 Mich. 93, 95, 173 N.W. 487 (1919); *Sterling* v. *Jackson*, 69 Mich. 488, 508, 37 N.W. 845 (1888)." *Ace Equipment Sales, Inc.* v. *Buccino*, supra, 82 Conn. App. 582–83.

the pond had existed for nearly one-half century, it had become a natural waterway. Id., 584. Thus, the court reasoned that the Buccinos' riparian rights were not limited based on whether the pond was man-made when it was created. Id., 585. Finally, the Appellate Court rejected the plaintiffs' claim that the defendants' deed prohibited their use of the pond for recreational purposes. This certified appeal followed.

The plaintiffs claim that the defendants do not have a riparian right to use the pond for recreational purposes solely by virtue of the Buccinos' ownership of abutting property because the plaintiffs' ownership of the entire pond bed grants them exclusive riparian rights under our case law applying to a body of water that is nonnavigable and man-made. The plaintiffs further claim that, irrespective of a riparian right, the Buccinos' deed prohibits them from entering and using the pond for recreational purposes because its language restricts their use of the pond to industrial purposes. In response, the defendants contend that: (1) the pond has become a natural body of water because it has existed for a long period of time, thus our case law applying to man-made bodies of water does not apply; (2) the pond's navigability or lack thereof is irrelevant; and (3) the Buccinos' easement flowage rights and duties as owners of the dam that enables the pond's existence afford the defendants the right to use the pond for recreational purposes. We agree with the plaintiffs.[7]

---

[7] The plaintiffs and the defendants assert claims regarding the significance of the natural versus man-made status of the pond. Under our case law, however, we have not made such a distinction; instead, the navigability of a body of water is the critical factor in determining whether an owner of the land beneath the pond has exclusive rights to its use, a factual issue that is not in dispute here. See, e.g., *Adams* v. *Pease*, 2 Conn. 481, 483 (1818) (Stating that with respect to a natural body in the context of littoral ownership, "[b]y the common law . . . in navigable rivers, and navigable arms of the sea, the right of fishing is common to all. In rivers not navigable, the adjoining proprietors have the exclusive right."); *Chapman* v. *Kimball*, 9 Conn. 37, 40–41 (1831) (Stating with respect to natural body, "[a] distinction is always maintained between rivers navigable and those not navigable. . . .

Before addressing the merits of the plaintiffs' claims, we set forth the applicable standard for our review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most

Of the former the public alone has right . . . of the latter, individuals may, and generally do own the same right as over other real estate."). Although the defendants cite our decision in *Adams* v. *Manning*, 48 Conn. 477 (1881), for the proposition that the natural versus man-made distinction is significant and accordingly argue that the pond has evolved into a natural waterway due to its lengthy existence, their reliance on that decision is misplaced. In *Adams* v. *Manning*, supra, 488, this court held that a reservoir, which originally had been created and always had been used as a water source shared among a group of mill owners to sustain the operation of their mills during the dry summer season, had become a natural waterway due to its lengthy existence *and* the long-term detrimental reliance of the neighboring mill owners on its use for industrial purposes. In the present case, although the pond has been in existence for some time, the Buccinos cannot claim detrimental reliance on its use for recreational purposes as they admitted that they rarely have used the pond for such purposes since obtaining the adjacent property. Furthermore, in *Adams* v. *Manning*, supra, 488, the plaintiffs sought to enjoin the defendants in that case from draining the reservoir and eliminating the water source altogether. The plaintiffs in the present case have expressed no intention of draining the pond or interfering with the Buccinos' defendants' use of the pond for industrial purposes. Thus, *Adams* v. *Manning*, supra, 477, does not advance the defendants' claim. The cases relied upon by the licensees in this regard similarly are inapposite to the present case, either because they were predicated on detrimental reliance or facts that are inapplicable to this case, i.e., natural bodies, etc. See *Lake Williams Beach Assn.* v. *Gilman Bros. Co.*, 197 Conn. 134, 139, 496 A.2d 182 (1985); *DeWitt* v. *Bissell*, 77 Conn. 530, 535, 60 A. 113 (1905); *Chamberlain* v. *Hemingway*, 63 Conn. 1, 6–9, 27 A. 239 (1893); *Lake Mille Lacs Investment, Inc.* v. *Payne*, 401 N.W. 2d 387, 389–90 (Minn. App. 1987); *Taggert* v. *Jaffrey*, 75 N.H. 473, 474–76, 76 A. 123 (1910); *Cloyes* v. *Middlebury Electric Co.*, 80 Vt. 109, 121–22, 66 A. 1039 (1907); *Smith* v. *Youmans*, 96 Wis. 103, 109–10, 70 N.W. 1115 (1897); *Closemore* v. *Richards*, 11 Eng. Rep. 140, 153 (H.L. 1859). Thus, in the present case, we are dealing with a man-made, nonnavigable body of water and there is no need for this court to decide at this time if the result would be different for a nonnavigable, natural body of water.

favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Pane* v. *Danbury*, 267 Conn. 669, 674–75, 841 A.2d 684 (2004).

Turning to the merits of the present case, we begin with an undisputed and essential fact. Because the plaintiffs obtained their ownership of the pond and the underlying pond bed by way of a deed describing their property in terms of metes and bounds, they have ownership in severalty[8] for whatever portion they own, as

---

[8] When a deed conveying property abutting a body of water specifically delineates and describes the boundaries of the property, such as by metes and bounds, and that description includes a portion of the land beneath the water, that portion is owned in severalty. See Black's Law Dictionary (8th Ed. 2004) (Defining "severalty" as "[t]he state or condition of being separate or distinct"; defining "metes and bounds" as "[t]he territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties. Metes and bounds are [usually] described in deeds and surveys to establish the boundary lines of land."). By contrast, when a deed generally describes the abutting property as bounded by the body of water, title to the bed is based on littoral ownership, and each littoral owner impliedly owns the land under the water to the center of the body and each abutting owner is entitled to common use of the entire body. *Mill River Woolen Mfg. Co.* v. *Smith*, 34 Conn. 462, 463 (1867) ("[i]t is well settled that where land is bounded, in a deed, in general terms, on or by a river or stream not navigable, the grant extends to the center of it"); see 78 Am. Jur. 2d 391–92, Waters § 34 (2002) ("In the case of a lake suitable for domestic or recreational uses, a littoral owner has a right to make such use of the lake over its entire surface, in common with all other abutting owners . . . . However, if in granting land bordering on a small lake capable of private ownership the lines are run through the lake, no littoral right to the use of the whole lake is acquired by any grantee, but

opposed to littoral ownership.[9] Thus, we start with a well settled common-law principle. With respect to man-made, nonnavigable bodies of water, the prevailing view is the common-law rule that when a party owns a portion of the land beneath the water in severalty, that party has exclusive rights over that portion, and riparian rights with respect to that portion do not attach to other properties abutting the water. *Miller* v. *Lutheran Conference & Camp Assn.*, 331 Pa. 241, 247, 200 A. 646 (1938) ("[o]rdinarily, title to land bordering on a navigable stream extends to low water mark subject to the rights of the public to navigation and fishery between high and low water . . . but in the case of a non-navigable lake or pond where the land under the water is owned by others, no riparian rights attach to the property bordering on the water, and an attempt to exercise any such rights by invading the water is as much a trespass as if an unauthorized entry were made upon the dry land of another"); 1 H. Farnham, Law of

barriers may be placed along the division lines which will exclude the owners of all other portions of the lake bed from the use, for recreational purposes, of the water within them."); R. Reis, Connecticut Water Law: Judicial Allocation of Water Resources (1967), pp. 89–90 ("where title to the bed is based upon littoral ownership, rather than bed ownership in severalty, or of almost all the land around a lake, the right to the use of the surface of the lake for all necessary and proper purposes is common to all littoral proprietors"); see also *Taylor Fishing Club* v. *Hammett*, 88 S.W.2d 127, 130 (Tex. Civ. App. 1935). In the present case, because the plaintiffs' portion of the pond bed is owned in severalty, the rule that applies to the rights of littoral owners is inapplicable. See, e.g., *Harvey Realty Co.* v. *Wallingford*, 111 Conn. 352, 359–61, 150 A. 60 (1930) (evaluating scope of riparian rights and reasonable use, rather than deciding when riparian right actually exists).

[9] Historically, property rights in lakes were significantly different from property rights in streams, and each had a different name. 1 R. Beck, Waters and Water Rights (2001 Replacement Volume) § 6.02 (b), p. 6-99. Rights in streams were "riparian," while rights in lakes were "littoral." Id. Although rights in the Great Lakes, and other large bodies of standing water still are treated differently from the rights of owners along the shore of smaller lakes or ponds in some jurisdictions, the two terms generally have merged and the term "riparian right" is now considered to encompass both types. Id., pp. 6-99 through 6-100.

Waters and Water Rights (1904) § 58a, p. 268 ("The owner of the water if it is not navigable whether it is a stream or a pond has the absolute title to it and he may exclude strangers from it at his pleasure. His title is the same as that to any other portion of his real estate and any entry upon the land by strangers is a trespass."); 1 R. Beck, Waters and Water Rights (2001 Replacement Volume) § 6.02 (b), p. 6-101 ("Thus the rule continues in quite a few states that only the owner of the bed of a nonnavigable lake could boat, fish, or swim in the water overlying that part of the lake bed. Persons, even owners of other parts of the lake bed, who entered [another] owner's water column without permission are as guilty of trespass as if the water were not there."); R. Reis, Connecticut Water Law: Judicial Allocation of Water Resources (1967) p. 89 ("The ownership of sub-aqueous lands can be important because of the control accorded the title holder of land to prevent trespassers from entering upon or using the land. Where bed ownership has been severed from the upland, the bed owner may control the use of both the bed and the surface of a pond or lake."); annot., 57 A.L.R.2d 592, § 10 (1958) ("[i]n cases where various parts of the soil under a private lake are owned by different persons . . . it has generally been held that each owner has exclusive rights to use of the surface of the water over his own land, or at least that the owner of a larger portion can exclude from it the owner of a small portion").

Connecticut consistently has followed the common-law rule. See, e.g., *Adams* v. *Pease*, 2 Conn. 481, 483 (1818) (holding, with respect to littoral ownership, adjoining property owners have exclusive rights in non-navigable bodies); *Chapman* v. *Kimball*, 9 Conn. 37, 40 (1831) (holding, with respect to nonnavigable bodies, owners have same exclusive property rights as over other real estate); *Turner* v. *Selectmen of Hebron*, 61 Conn. 175, 188, 22 A. 951 (1891) (holding, where natural,

nonnavigable body was converted to artificial via dam, that right to take fish from pond belongs to owner of soil over which water flows because ownership of soil carries with it ownership of water); *Mad River Co.* v. *Pracney,* 100 Conn. 466, 474, 123 A. 918 (1924) (affirming trial court judgment in favor of defendant where plaintiff had brought trespass action but failed to show ownership of any subaqueous land in man-made, nonnavigable body); *Great Hill Lake, Inc.* v. *Caswell,* 126 Conn. 364, 367, 11 A.2d 396 (1940) (holding that when abutting owner held title to most of land over which plaintiff had right of flowage, plaintiff had exclusive rights only to that portion of lake in which plaintiff held title to land beneath); *Schroder* v. *Battistoni,* 151 Conn. 458, 462, 199 A.2d 10 (1964) (holding that owner of lake and land beneath can exclude abutting owners from using lake). Similarly, the majority of states that have considered this question also follow the common-law rule. See *Wehby* v. *Turpin,* 710 So. 2d 1243, 1246–49 (Ala. 1998); *Medlock* v. *Galbreath,* 208 Ark. 681, 682–83, 187 S.W.2d 545 (1945); *Anderson* v. *Bell,* 433 So. 2d 1202, 1204 (Fla. 1983); *Lanier* v. *Ocean Pond Fishing Club, Inc.,* 253 Ga. 549, 550, 322 S.E.2d 494 (1984); *Carnahan* v. *Moriah Property Owners Assn.,* 716 N.E.2d 437, 440–41 (Ind. 1999); *State ex rel. Meek* v. *Hays,* 246 Kan. 99, 111, 785 P.2d 1356 (1990); *Rutledge* v. *Young,* 646 S.W.2d 349, 350 (Ky. App. 1982); *Crenshaw* v. *Graybeal,* 597 So. 2d 650, 652 (Miss. 1992); *Baker* v. *Normanoch Assn., Inc.,* 25 N.J. 407, 415–16, 136 A.2d 645 (1957); *Akron Canal & Hydraulic Co.* v. *Fontaine,* 72 Ohio App. 93, 98, 50 N.E.2d 897 (1943); *Miller* v. *Lutheran Conference & Camp Assn.,* supra, 331 Pa. 247; *Goloskie* v. *La Lancette,* 91 R.I. 317, 324, 163 A.2d 325 (1960); *Taylor Fishing Club* v. *Hammett,* 88 S.W.2d 127, 130 (Tex. Civ. App. 1935); *Wickouski* v. *Swift,* 203 Va. 467, 469–71, 124 S.E.2d 892 (1962); *Ours* v. *Grace Property, Inc.,* 186 W. Va. 296, 299–300, 412

S.E.2d 490 (1991); *Mayer* v. *Grueber*, 29 Wis. 2d 168, 176, 138 N.W.2d 197 (1965).

We acknowledge that there is a minority civil law rule, which provides that owners of land beneath a body of water have the right to reasonable use and enjoyment of the entire body and that this ownership does not include the right to exclude abutting owners. We also recognize, however, that the few states to have followed this rule have an extensive number of natural lakes, and therefore understandably have adopted a policy favoring maximum recreational use. See *Beacham* v. *Lake Zurich Property Owners Assn.*, 123 Ill. 2d 227, 231–32, 526 N.E.2d 154 (1988) (adopting civil law rule based on impractical consequences of establishing boundary lines underwater and desire to promote recreational use and enjoyment of lakes); *Johnson* v. *Seifert*, 257 Minn. 159, 167–69, 100 N.W.2d 689 (1960) (adopting civil law rule based in part on Minnesota's extensive waters of recreational and commercial value); R. Johnson, note, 28 Ore. L. Rev. 267, 281 (1949) ("[t]he minority view stems from jurisdictions with great numbers of inland waterways where hunting and fishing have become major industries"); see also *Beach* v. *Hayner*, 207 Mich. 93, 95–98, 173 N.W. 487 (1919); *Elder* v. *Delcour*, 364 Mo. 835, 847–48, 269 S.W.2d 17 (1954); *Snively* v. *Jaber*, 48 Wash. 2d 815, 821–22, 296 P.2d 1015 (1956).[10] Although we similarly appreciate the value of recreational and commercial water use, "there is nothing in [Connecticut's] topography or location that requires a departure from the rules of the common law. Unlike some of our sister States, we have no large inland lakes,

---

[10] We note that at least two of these jurisdictions that have adopted the civil law rule have held that the rule applies only to natural bodies and artificial bodies that have become natural through prescription and detrimental reliance. *Lake Mille Lacs Investment, Inc.* v. *Payne*, 401 N.W.2d 387, 389–90 (Minn. App. 1987); *Greisinger* v. *Klinhardt*, 321 Mo. 186, 193–95, 9 S.W.2d 978 (1928); see also footnote 7 of this opinion distinguishing the present case from others based on detrimental reliance.

which are, in fact, inland seas, upon which an extensive commerce is carried on, or which are the boundaries with a foreign nation." (Internal quotation marks omitted.) *Hardin* v. *Jordan*, 140 U.S. 371, 395, 11 S. Ct. 808, 35 L. Ed. 428 (1891), quoting *Cobb* v. *Davenport*, 32 N.J.L. 369, 380 (1867). Accordingly, we conclude that the common-law rule should be applied in the present case.[11]

With these principles in mind, we turn to the present case. It is undisputed that the plaintiffs own 99 percent of the pond bed in severalty. See footnote 4 of this opinion. In accordance with the common-law principles previously outlined, therefore, the plaintiffs have exclusive control over this portion of the pond bed and the waters above it. This right permits the plaintiffs to exclude others, including the Buccinos, as abutting owners of the lake bed, by erecting a fence or other barrier to prevent others from utilizing the water which overlies the plaintiffs' property. Accordingly, the Appellate Court improperly determined that the Buccinos had a riparian right to use the entire pond by virtue of their status as abutting landowners.

---

[11] We note that our decision comports with Connecticut's strong public policy favoring the protection of private property rights. See *Kaiser Aetna* v. *United States*, 444 U.S. 164, 179–80, 100 S. Ct. 383, 62 L. Ed. 2d 332 (1979) (considering rights of private pond owner where federal government sought to enforce public recreational rights in pond, court held that "the 'right to exclude,' so universally held to be a fundamental element of the property right, falls within [the] category of interests that the Government cannot take without compensation"). In the present case, the plaintiffs have relied on the belief that they are the sole owners of the pond and on the exclusive rights that usually accompany private ownership. When the boundary lines are clearly marked, as in the present case, we see no reason to deviate from the common-law rule when such a departure would "sweep away the reliance by property owners on the concept that ownership of all the subaqueous land conveys exclusive riparian rights." *Ace Equipment Sales, Inc.* v. *Buccino,* supra, 82 Conn. App. 592 (*Schaller, J.,* dissenting); see also *Anderson* v. *Bell,* supra, 433 So. 2d 1205–1206 (adopting common-law rule and discussing various economic policy concerns as well as difficulty of limiting civil law rule).

Nonetheless, the Buccinos rely on this court's decision in *Gager* v. *Carlson*, 146 Conn. 288, 150 A.2d 302 (1959), for the proposition that, even in the absence of a riparian right, they have a right pursuant to their deed in that their ownership of the dam and flowage easement afford them a right to recreational use of the pond. This reliance is misplaced.[12] In *Gager*, the court stated that "[a] flowage easement . . . merely authorizes the flooding, by an owner of a riparian dominant tenement, of land of the servient tenement which he does not himself own and therefore would otherwise have no right to overflow. . . . It gives no 'ownership,' as such, in the water over the servient tenement." (Citation omitted.) Id., 295. The court concluded therein that the holder of the flowage easement had exclusive recreational rights only over the land which he owned absolutely, and that the owner of the land subject to the easement had, as against the easement holder, "all the rights of ownership, including the rights of boating, swimming and fishing, except those expressly or impliedly necessary or incident to the enjoyment of the easement." Id., 296. Although the court ultimately determined that the flowage easement in question permitted the right of the easement holder to recreational use of the water, it reached this conclusion based on the fact that the easement did not include *any* language limiting the easement to a specific purpose, thus rendering it broad enough to permit all reasonable uses. Id., 297–98. In the present case, the Buccinos' easement was granted for industrial purposes only. Thus, there is no basis on which we could conclude that the easement

---

[12] The Buccinos also mistakenly rely on this court's decision in *DeWitt* v. *Bissell*, 77 Conn. 530, 60 A. 113 (1905), for this proposition. In that case, this court held that an owner of land bordering and beneath a natural body may erect a dam to create a pond and use the water for any purpose so long as he does not interfere with the rights of other proprietors. Id., 535. Thus, *DeWitt* addressed the diversion of water for one abutting property owner's use, not that owner's right to use another property owner's water.

entitles them to any use beyond said purposes.[13] See *Lynch* v. *White*, 85 Conn. 545, 551, 84 A. 326 (1912) (concluding that lower court properly had held that defendants were precluded from using land "for an entirely different purpose than that for which the easement was granted"); *Ladies Seamen's Friend Society* v. *Halstead*, 58 Conn. 144, 151, 19 A. 658 (1889) (holding that where express grant was specifically limited, it cannot be presumed that grantor intended to convey any additional riparian right beyond that limited grant); see also *Mianus Realty Co.* v. *Greenway*, 151 Conn. 128, 132, 193 A.2d 713 (1963) ("[W]hether or not riparian rights are conveyed along with the grant of the uplands depends largely upon the intent of the grantor. Such intent is to be determined from the language of the deed and surrounding circumstances."); *Miller* v. *Lutheran Conference & Camp Assn.*, supra, 331 Pa. 247 (applying common-law rule and holding that deed that granted right to fish and to boat, but did not mention bathing rights, did not include bathing rights; "[t]his omission may have been the result of oversight or it may have been deliberate, but in either event the legal consequence is the same"); *Mayer* v. *Grueber*, supra, 29 Wis. 2d 174 ("one who acquires land abutting a stream or body of water may acquire no more than is conveyed by his deed").[14]

---

[13] The Appellate Court interpreted the language of the Buccinos' easement, which provides the right to "take and use water from said pond through said penstock, and the further right to take and use water from said pond that may be necessary for industrial purposes" as conveying "two separate rights, the right to use water through a penstock and the right to use water for industrial purposes." (Internal quotation marks omitted.) *Ace Equipment Sales, Inc.* v. *Buccino*, supra, 82 Conn. App. 586. A penstock is a gate or sluice for controlling a flow of water. Thus, although the Appellate Court's reading of the easement is not unreasonable, the separate right to take and use water *from the penstock* reasonably cannot be interpreted as a right to recreational use of the entire pond.

[14] Our holding in the present case addresses only the 99 percent of the pond bed that the plaintiffs own undisputedly. As previously noted; see footnote 4 of this opinion; a factual dispute remains as to whether the Buccinos own the other 1 percent. On remand, the trial court must decide

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction (1) to reverse the judgment of the trial court and (2) to remand the case to the trial court with direction to deny the defendants' motion for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.

if the Buccinos own this portion of the bed. We note that the Buccinos previously admitted in writing that they do not own any portion of the land beneath the pond, and that the trial court previously concluded that these statements were admissible against them. We further note that the tax assessor of the town of Willington stated in an affidavit submitted with the plaintiffs' motion for summary judgment that the plaintiffs own the pond in its entirety and that the Buccinos do not own any portion of it. Nonetheless, should the trial court find that the Buccinos own the disputed 1 percent of the pond bed in severalty, then applying the law of this case, the Buccinos would be entitled to the same exclusive rights with respect to their 1 percent as those afforded the plaintiffs pursuant to their ownership of the other 99 percent.